[Filed April 30, 1888.]

NARCISSA D. GASTON, Plaintiff and Appellant, *v.* CITY OF PORTLAND, Defendant and Respondent.

A Deed may be Delivered as an Escrow to any Person Other than the Grantee, and does not become a conveyance so long as it remains in that condition, or until the condition is performed upon which it is to take effect.  To make the delivery conditional, it is not necessary that any express words should be used that it was delivered as an escrow to make it such; that conclusion is to be drawn from all the facts and circumstances.  If at the time of the delivery the party expressly declare that he delivered it as an escrow, it obviated all question as to the intention, but that is not essential to make it an escrow.

ESCROW.—It is not necessary that the condition upon which a deed is delivered in escrow be expressed in writing; it may rest in parol, or be partly in writing and in part oral.

APPEAL from Multnomah County. Reversed.

*W. H. Adams,* for Respondent.

*J. K. Kelly,* and *Whalley, Bronough & Northrup,* for Appellant.

LORD, C. J.—This was a suit in equity to enjoin the defendant from disturbing the possession of the plaintiff in a certain strip of land, which is claimed by the defendant to be a part of West Main Street, and for a decree quieting title to the same. The title of the plaintiff is not disputed, but the defendant relies on a deed of dedication, executed by the plaintiff and her husband, to the tract in dispute for public use as a street; while the plaintiff, admitting such execution, alleges that the same was made upon condition and delivered in escrow, and that such condition was never performed, and that there was no delivery. The main question to be determined is whether the *locus in quo* was dedicated by the alleged deed as a street by the plaintiff.

It appears from the evidence that several parties residing along West Main Street for various reasons were desirous of procuring its extension to King Street. To do this it would have to pass through the lands of Kamm and the plaintiff, and a strip sufficient for that purpose would either have to be bought, or condemned and paid for by the defendant. As the Kamm tract was intersected by a ravine which would have to be spanned by a bridge, or built up by filling in the requisite width, the cost of the proposed extension of such street would necessarily be heavy and involve an expensive outlay by the city. In consequence of this state of facts, it was important to secure a right of way for such street through these lands from the owners, who would be affected by the proposed extension, without cost, or by dedication by deed, in order to diminish as much as possible the expense, and to induce the city to undertake the project.

Dr. William H. Watkins, who seems to have been the active manager and representative of the residents favoring the pro-

posed extension, early discovered, by interviews and consultations with the city authorities, officially and unofficially, that the heavy expense which the undertaking involved would constitute the main objection to its success, and in order to lessen the weight of that objection, and to more favorably recommend the matter to the authorities, upon the suggestion of one of the city officials, he saw that it would be advisable to procure deeds of dedication from such owners, to be delivered upon the condition that the proposed extension of such street be authoritatively ordered and carried into effect. It needs also to be stated that the land in controversy constituted the extreme end of such proposed street extension, and unless it was opened through its entire length, and especially through Kamm's, it could be of no possible convenience or benefit to the plaintiff, but rather an actual injury and detriment. In the main, these were the facts which confronted the promotions of this street extension, and the circumstance which surrounded it at its inception. And in the light of these, it is not difficult to understand that Dr. Watkins and others, intent on securing the extension of West Main Street, should be anxious to secure a right of way across the lands of the plaintiff by dedication, in furtherance of that project, and as an inducement for the city to act in the matter. As there could be no object of the plaintiff in donating the *locus in quo* unless the street was extended, the necessity of the case, as Dr. Watkins recognized, required that he should have the deed of the plaintiff in possession, so as to be able to say, in effect, to the city authorities, that the deed is executed, and to be delivered to you upon condition that you make the proposed extension.

This is the undoubted effect of the undisputed facts, and there is much in the evidence of Dr. Watkins to confirm this view, although the circumstances to which he testified occurred more than fifteen years ago, and some of its important features had faded from his memory. He admits that he received the deed to show to the city authorities, and that the object of the deed of dedication was to induce the city to extend Main Street, and this is consistent with the idea that he held it as an escrow, and yet he says his recollection is that it was given to him to give to

XVI. OR.—17.

the city authorities, although "he don't pretend to recollect any conversation about it." The truth is, as his evidence indicates, the particulars in respect to this matter had passed out of his mind, yet his own, as the other evidence clearly establishes the necessity of procuring the deed to induce the city to undertake to extend the street. Now unless the city should open the street or extend it as proposed, it had no use for the strip of land, nor the plaintiff any interest in donating it, and in such case it is more consistent with reason, good faith, and ordinary dealings to infer that the deed was deposited as an escrow, to be delivered when the defendant should cause Main Street to be extended and opened, than a present operative conveyance. But whatever doubt might arise upon the facts not disputed, which surround the initiative of such street extension, when taken in connection with some expressions in the testimony of Dr. Watkins, that doubt must disappear when considered in the light of the other evidence.

The testimony of the plaintiff is direct to the point that "the deed was given as an assurance that if they prosecuted that thing it would go through there, and failing to do that, it was no deed; it was not to be delivered to the city." Again, in stating some of the reasons, she said: "We had no access to the city, and we wanted a street through there, and it was to secure this street through Kamm's that this assurance was made that in case they gave this street to us it could go on to King Street; failing in that it was no deed." Besser, who was city councilman at the time, says that Dr. Watkins represented the parties to the deed; that the deed was not given absolutely, but upon condition that the city of Portland should open the street; that the city council never as a body accepted the deed, or directed it to be recorded, nor fulfilled the condition upon which it was to be delivered. Gaston, who is the husband of the plaintiff, testifies that the dedication deed was to take effect whenever the city of Portland within two years should open West Main Street; that the understanding with the city authorities was "that Dr. Watkins should hold the deed until the city should open the street across the Kamm tract, and when so opened, Watkins was to

deliver the deed to the city authorities"; that the city never has opened such street; and that without the proposed extension it would be of no benefit whatever to the plaintiff, but a great damage. Without further recurring to particulars, their evidence is to the effect that the deed of dedication was put into the hands of Dr. Watkins, to be held by him and delivered to the defendant when it should cause Main Street to be extended as proposed, and that such extension has not been made, or the condition performed upon which the deed was to be delivered. While the counsel for the defendant ably and industriously labored to avoid this result upon the facts, he insisted, nevertheless, that the deed when delivered to Dr. Watkins became at once operative, whether or not it was given on the condition that the city make the proposed extension, because no fit or apt words were used in delivering it; that is, because it was not expressly declared to be delivered as an "escrow." But as we shall presently show, this is not the law at the present day.

It is elementary that a delivery is essential to the execution of a deed, and until delivered it is no deed. A deed may be delivered as an escrow to any person other than the grantee, and does not become a conveyance so long as it remains in that condition, or until the condition is performed upon which it is to take effect. To make a deed an escrow it must be delivered to a stranger, to hold until the condition is performed, and then to be delivered to the grantee. (*Rayman* v. *Smith,* 5 Conn. 559.) Shepherd in his Touchstone says: "The delivery of a deed as an escrow is said to be when one doth make and seal a deed and deliver it unto a stranger until certain conditions be performed, and then be delivered to him to whom the deed is made to take effect as his deed." The author then proceeds to say that the form of words to be used in the delivery of the deed to one that is a stranger to it must be apt and proper, and that it must be after this manner: "I deliver this writing to you as an escrow to deliver," etc., implying at least that the word "escrow" must be used in delivering it to make the writing such. And this is the citation upon which the counsel built and pressed his argument.

It is best answered by Abbott, C. J., in *Murray* v. *Stair*, 2 Barn. & C. 87, where he says: "But if the delivery itself at the time was conditional so as not to constitute any present obligation, it was an escrow or writing merely and not a deed; and the conditions of the delivery having been broken it had never became the deed of the defendant. To make the delivery conditional, it was not necessary that any express words should be used at the time. The conclusion was to be drawn from all the circumstances. It obviated all questions as to the intention of the party, if at the time of the delivery he expressly declared that he delivered it as an escrow; but that is not essential to make it an escrow." This shows, as must be applied to the case in hand, that the intention of the parties respecting a delivery is to prevail, and that it is not necessary that there should be an express declaration that it was delivered as an escrow to make it such. That if the delivery was conditional so as not to constitute a present operative conveyance, it was an escrow and not a deed. As the deed in question was not delivered to the grantee, but to a third person, the character of the delivery must depend upon the evidence.

Said Williams, C. J., in *White* v. *Bailey*, 14 Conn. 274: "The writer could not, it is believed, have intended to say that it could not be an escrow unless the grantee in terms declared he intended it to be such, for a great proportion of persons cannot be supposed even to know the meaning of the term; and it might as well be said that the deed could not operate as such unless the party declared it to be his act and deed, which has often been held to be unnecessary. (*Thoroughgood's Case*, 9 The Reporter [5 Coke], 137; *Holfora* v. *Parker*, Hob. 246.) No form of words can be necessary in o. ᵛ case any more than in the other; and the writer must have m ᵗ that the evidence must show that the grantor intended it as ᴀ escrow, otherwise it would presume to be what it purported to be, his act and deed; for the law is well settled that a deed is delivered as an escrow when the delivery is conditional, that is, when it is delivered to · third person to keep until something be done by the grantee; and it is of no force until the condition be fulfilled." (*Jackson*

v. *Catlin,* 2 Johns. 248, 259; 3 Am. Dec. 415; *Clark* v. *Gifford,* 10 Wend. 310.)

The intent of the grantor must govern, and this is to be derived from all the facts, circumstances, and proof. Nor is it necessary that the condition upon which the deed is delivered in escrow be expressed in writing; it may rest in parol, or be partly in writing and in part oral. The rule that a contract in writing *inter partes* must be deemed to contain the entire agreement or understanding has no application in such case. (*Stanton* v. *Miller,* 58 N. Y. 193.)

In view of all the facts and circumstances, we are satisfied from what the evidence shows was said and done at the time, and the legitimate inferences to be drawn therefrom, as well as the conduct of the parties in respect to it, and subsequently, the conveyance is without consideration and the reasons which induced it, the failure of the city to perform the conditions, and the continuous undisturbed possession of the plaintiff in the land and her acts of ownership over it, that the deed was delivered to Dr. Watkins, to be held by him and delivered to the city upon the condition it open and extend Main Street as alleged.

As a consequence the decree must be reversed, and the prayer of the plaintiff be granted, and it is so ordered.