## SCHMIDT v. MUSSON et al.

Where a contract provided that in consideration of a deed to be executed by one party the other party sold all his interest in a certain partnership, together with its lands and personal property, evidence of a contemporaneous oral agreement that the deed should not be delivered until the grantee therein had given the grantor possession of certain property, books, and accounts, belonging to the firm, was not objectionable as varying the written contract, but related to an independent matter.

Where a deed is delivered as an escrow, nothing passes, unless the conditions upon which the deed is to be delivered are complied with; and this is true, though the deed was wrongfully obtained by the grantee and recorded.

A purchaser from a grantee in a quitclaim deed is not a bona fide purchaser, but takes with notice of outstanding equities.

(Opinion filed April 3, 1906.)

Appeal from Circuit Court, McCook County. Hon. JOSEPH W. JONES, Judge.

Action by H. L. Schmidt against Sarah Musson and others. From a judgment for defendants, plaintiff appeals. Reversed.

*H. H. Keith* and *E. H. Wilson,* for appellant.

To constitute delivery of a deed it is not sufficient that there be a mere delivery of its possession, but this act must be accompanied with the intent that the deed should become operative as such. Kenney v. Parks, 70 Pac. 557; 2 Boome Real Property, § 295a. Black v. Sharkey, 37 Pac. 939; Denis v. Velati, 31 Pac. 1; Harris v. Harris, 59 Cal. 622. Where a deed is delivered as an escrow nothing passes by the deed, unless the condition is perform-

ed, although the deed was previously recorded, if it was wrongfully procured for registry. Partrick v. McCormick, 4 N. W. 418; Davis v. Clark, 48 Pac. 563; Dagget v. Dagget, 10 N. E. 311; Jackson v. Rowley, 55 N. W. 340, Opinion; Taft v. Taft, 26 N. W. 426; Vol. 13 Cyc. page 567d. When a deed is delivered to a third person to be by him held until the performance of certain conditions by the grantee, the title does not vest in the latter until the conditions are performed. Gaston v. City of Portland, 12 Or. 225; Hayden v. Meeks, 14 S. W. 864; Steamboat Co. v. Moragne, 91 Ala. 610; Dagget v. Dagget, 143 Mass. 616; Quick v. Milligan, 108 Ind. 419; Taft v. Taft, 56 Mich. 185; Patrick v. McCormick, 10 Nebr. 1; Knopf v. Hansen, 37 Minn. 215; 6 Am. & Eng. Enc. Law, p. 867; Haven v. Kramer, 41 Iowa, 387; Logedon v. Newton, 54 Iowa 448, 6 N. W. 715.

A. C. Biernatzki, for respondent.

In the absence of fraud or mistake, all contemporaneous agreements are merged in the written agreement. 21 A. & E. Ency. Law, 1078-9; Washabaugh v. Hall, 4 S. D. 168. Inconsistent agreement cannot be injected into the contract by showing a parol agreement made at the time. Roberts v. Minneapolis Co., 8 S. D. 580; Lumber Co. v. Wilkens, 94 N. W. 337; Griffam v. Pierce, 9 N. E. 819; Hei v. Heller, 10 N. W. 620; Dixon v. Blondin, 5 Atl. 514; 1 Greenl. Ev. Sec. 275; Hardwick v. McClurg, 65 Pac. 405. The consideration of a deed may, under some circumstances, be inquired into, but this can never be done when there is a contract which determines the consideration. First Nat. Bank v. Prior, 86 N. W. 362; Powers v. Spaulding, 71 N. W. 891; Unger v. Smith, 5 N. W. 1069; Flinn v. Bourneff, 9 N. E. 650; Desmond v. McNamara, supra. Parol evidence of a condition subsequent can never be received, the only condition that can be shown is a condition precedent. 21 A. & E. Ency. 1098 note. If there was an escrow and Musson performed the conditions he was entitled to the deed. Rev. C. C. Sec. 1144; Bowman v. Gork, 63 N. W. 998; Knopf v. Hanson, 33 N. W. 781; Schmidt v. Deegan, 34 N. W. 83; 11 A. & E. Ency. 345. The same presumption exists in favor of his possession of the deed, and the same degree of proof is required to overcome such presumption as in other cases where deed

is found in grantee's possession. Inman v. Swearingen, 64 N. W. 1112; Dunlop v. Lamb, 55 N. E. 354; Griffin v. Griffin, 17 N. E. 782.

CORSON, J. This action is brought by the plaintiff to quiet title to a certain quarter section of land in Hanson county and to cancel of record a certain deed purporting to be executed by the plaintiff to one Thomas F. Musson, deceased. Findings and judgment being in favor of the defendants, the plaintiff has appealed.

The defendant Sarah Musson is the widow of Thomas F. Musson, deceased, and the other defendants therein named, except the Iowa Loan & Trust Company, are children and legatees of the deceased. The Iowa Loan & Trust Company claims an interest in said property by virtue of a mortgage executed by said Musson in his lifetime. It is disclosed by the record that on and prior to the 28th day of July, 1899, the plaintiff and said Thomas F. Musson were the principal owners of a stone quarry situated in said Hanson county, and that the plaintiff had the legal title to the quarter section of land in controversy in this action; that some differences existed between the plaintiff and the said Musson growing out of the transactions connected with the said quarry business, and that on said day they affected a settlement and entered into a contract in writing of which the following is a copy: "For and in consideration of a quitclaim deed to the N. E. ¼ of Sec. 25, Twp. 103, Range 57, Hanson Co., S. D., I, Thomas F. Musson, hereby sell and make over unto H. L. Schmidt all my right, title and interest in the Spencer Stone Co., S. D. and its lands and personal property of every description. The said H. L. Schmidt is to pay a certain claim or mortgage now on the NE ¼ of Sec. 25, Twp. 103, Range 57, Hanson Co., S. D., of fifteen hundred dollars. The said H. L. Schmidt now holds two certain notes for $250 each dated Nov. 27, 1894, signed by the Spencer Stone Co. and endorsed by Thos. F. Musson, which notes are included in above settlement. The said Thos. F. Musson holds two notes of $250 each, same as above mentioned, and is also included in above settlement. All claims against the Spencer Stone Co. held by the C. E. Simmins estate will be paid and settled by the said H. L. Schmidt. Witness our hands and seals this 26th day of July, 1899." This contract was drawn

by one Hoese, a banker at Spencer, at the request of the parties, and was executed in duplicate. At the same time a quitclaim deed was executed by the plaintiff to the said Musson and left with said Hoese upon what is claimed by the plaintiff to be a subsequent agreement entered into between the plaintiff and the defendant Musson.

The terms of this alleged new agreement or addional contract are thus stated by Mr. Hoese, who appears to have been the only witness to the transaction outside of the parties thereto. In his direct examination Mr. Hoese testified as follows: "Q. You may state what connection you had with the transaction between these parties on that date? A. They appeared in the bank at Spencer and asked me whether I had time to draw a contract bteween them. I told them I would if they would dictate it. They said they were ready to draw it. I got out some paper, ink, and pen, and drew the contract, dictated by Mr. Musson, although Mr. Schmidt was present; and after the contract was signed before me I drew the deed, a quitclaim deed, which was signed by Mr. Schmidt. Q. State what was said between the parties with reference to the giving of a quitclaim deed of the property, and what should be done with it after it was drawn and signed by Mr. Schmidt? A. This quitclaim deed was drawn by me, signed by Mr. Schmidt, and it was agreed that the same should stay in my possession until Mr. Schmidt could go home and get a new deed drawn, signed by himself and his wife, which he was to deliver to me, and, on delivery of such deed, I was to return the first deed signed by himself only, back to him, and deliver the deed signed by himself and wife to Mr. Musson on his turning over certain books, papers, and notes, tools and all his interest whatsoever pertaining to the Spencer Stone Company. By the Court: Q. You mean comply with the provisions of the written contract? A. If the contract covers these points; yes. sir. The first deed was left with me. Afterwards Mr. Schmidt presented to me a quitclaim deed of this same property signed by himself and wife. Mr. Musson did not turn over to me or the plaintiff the books of account and personal property mentioned in this contract. This first quitclaim deed I held in my possession from then until some time in April of the following year, when I was served with

certain papers. * * * I delivered the deed to the sheriff of McCook county upon his demand and upon his serving those papers upon me. He gave me a receipt for it. * * * I didn't deliver the deed to the sheriff by the acquiescence, request, or knowledge of the plaintiff in this action. I delivered those papers, supposing I was obliged to under the command of the sheriff." On re-direct examination the witness says: "A. Mr. Musson stated he would turn over all of his right, title, and interest in the Spencer stone quarry, consisting of books, papers, notes, and tools, stone quarry tools, and Mr. Schmidt said he would give a deed to this quarter of land, and settlement was made on that basis. The quitclaim deed made right then and there was to be left in my hands until Mr. Schmidt could make a new deed signed by himself and wife; that one to be delivered to me and I was to return the old deed back to him and I was to deliver the new deed to Mr. Musson on his doing as he agreed. Q. What do you mean? A. Turn over these things—this property—to Mr. Schmidt. Q. The deed was not to be delivered until this was done on his part? A. No sir. This deed was not to be delivered until this was done on his part. That was the agreement, and it has never been done. I have never delivered the deed to Mr. Musson." On cross-examination the witness stated: "As near as I can remember, he (Mr. Schmidt) came into the bank and says, 'Mr. Hoese, I have got that deed signed by myself and wife,' and showed me the deed, but he says, 'I am not going to deliver that deed to you, because Mr. Musson has not done as he agreed.'"

The plaintiff proceeded to Chicago and caused to be executed by himself and wife a quitclaim deed which was never delivered either to Hoese or the defndant Musson; the plaintiff claiming that he refused to deliver said deed for the reason that Musson had not complied with the terms of his agreement by delivering to the plaintiff the notes, papers, tools, etc., mentioned in the contract. Musson subsequently, in the year 1901, obtained possession of the said quitclaim deed signed by the plaintiff, from said Hoese by means of an action in claim and delivery as stated by said Hoese, of which the plaintiff had no notice until some time thereafter, and placed the same upon record, and under this deed the defendants, the legatees of said Musson, claim title and under which the said

Iowa Loan & Trust Company claim a lien by virtue of its mortgage. Subsequent to the execution of the said deed, Musson was in possession of the quarter section of land, and, subsequently to the recording thereof, made valuable improvements thereon, consisting of a dwelling house, barn and outbuildings. No rent for the use or occupation seems to have ever been received by the plaintiff, nor was any claim made by him for the same prior to the commencement of this action. All, or nearly all, of the findings of the court were excepted to by the plaintiff as unsupported by the evidence, and the principal question before us is as to whether or not the evidence supports these findings.

It is contended by the appellant (1) that the contract in regard to the delivery of the deed upon the condition that Musson should turn over to Hoese, for the plaintiff, the personal property, notes, accounts, etc., belonging to the quarry company was a subsequent agreement independent of the written contract, and was never complied with; (2) that the quitclaim deed executed by the plaintiff was never delivered to the said Musson, and that at the time he obtained possession of the same, the said Musson was not entitled thereto and that he acquired no right thereunder; (3) that Musson, having failed to comply with the terms of the oral, subsequent agreement, was not entitled to any deed of the property and acquired no right thereto; (4) that the Iowa Loan & Trust Company, having made its loan to Musson and taken the mortgage executed by him, acquired no valid lien upon the property, as Musson's title was based upon a quit-claim deed, of which the said loan company had at least constructive notice. It is contended by the respondent (1) that the evidence of Hoese was incompetent, for the reason that the entire contract was embodied in the written contract executed by the parties and that that contract could not be modified, changed, or contradicted by parol evidence.

It will be observed, however, that the evidence of the oral contract in regard to the delivery of the deed and the conditions upon which the same were to be delivered in no manner contradicts or modifies the written contract, as that contract made no provision for the time or the conditions upon which the deed was to be delivered. The oral contract, therefore, fixing the time

when, and the conditions upon which, the deed from Schmidt to Musson should be delivered was entirely independent of the contract, and the evidence relating to the same was properly admitted, Such subsequent oral contracts regarding the time when, and the conditions upon which the deed is to be delivered are quite usual, and are not held as contradicting the terms of the written contract, where such contract fails to state when and under what conditions. the deed is to be delivered. Such seems to have been the agreement between the parties as testified to by Hoese, and the evidence of such oral contract was properly admitted. Dikeman v. Arnold, 71 Mich. 656, 40 N. W. 45; Stanton v. Miller, 58 N. Y. 203; Gaston v. City of Portland, 16 Or. 255, 19 Pac. 127.

This brings us to the second and more important question, namely, was the quitclaim deed executed by the plaintiff ever legally delivered to Musson? It will be observed that by the evidence of Hoese the original quitclaim deed executed by the plaintiff was never, in fact, intended to be delivered to Musson. It was left with Hoese, to be retained by him until the plaintiff delivered to him a deed executed by himself and wife, and then to be returned to the plaintiff. It will be further observed that the deed executed by the plaintiff and wife was also to be delivered to Hoese and to be held by him until Musson should turn over certain books, notes, and other personal property of the stone quarry company, and that these books, papers, notes, etc., were never, in fact, turned over to Hoese, and that the deed executed by plaintiff individually was never delivered by Hoese to Musson, but was taken from him by means of legal process in an action of claim and delivery to which the plaintiff was not a party. The plaintiff, therefore, never delivered nor intended to deliver the deeds under which defendants claim to Musson. No rule seems to be better settled than that a deed to real property in order to convey title thereto must be delivered by the consent of the grantor to the grantee, and that until such delivery the title never vests in the grantee. When, therefore, a deed is delivered as an escrow, nothing passes by the deed unless the conditions upon which the deed is to be delivered are complied with although the deed may have been obtained by the grantee and recorded, if it was wrongfully obtained from the depositary and re-

corded without the consent of the grantor. Patrick v. McCormick, 10 Neb. 1, 4 N. W. 312; Davis v. Clark, 58 Kan. 100, 48 Pac. 563; Daggett v. Daggett, 143 Mass. 516, 10 N. E. 311; Jackson v. Rowley, 88 Iowa, 184, 55 N. W. 340; Taft v. Taft, 59 Mich. 185, 26 N. W. 426; 13 Cyc. p. 567d. In the last authority cited, the author, on the article on the subject of "Deeds," in speaking of a conditional delivery, uses the following language: "Where a deed is given to a third person to hold until the performance of some act by the grantee or the happening of some contingency, it does not operate as a delivery to the grantee." And the fact that the deed was taken from Hoese by legal proceedings does not alter or change the principle.

In Daggett v. Daggett, supra, the Supreme Court of Massachusetts in its opinion says: "When a deed is delivered merely as an escrow, to take effect upon the performance of some condition by the grantee in the future, no title passes until the condition has been performed. The transaction is incomplete. It is not the grantor's deed until the second delivery. Even if the grantee obtains possession of it before the condition has been performed, yet it is not the grantor's deed, and he may avoid it by pleading non est factum.

The grantee cannot acquire the title by gaining possession of the deed by theft, by fraud, or by the voluntary act of the depositary, but only by performance of the condition. The depositary has no authority to waive such performance, and an unauthorized delivery by him of the deed which he holds in escrow is entirely ineffectual to pass the title. Wheelwright v. Wheelwright, 2 Mass. 447, 452, 3 Am. Dec. 66; Foster v. Mansfield, 3 Metc. 415; O'Kelly v. O'Kelly, 8 Metc. 440; County of Calhoun v. American Emigrant Co., 93 U. S. 124, 127, 23 L. Ed. 826; Watkins v. Nash, L. R. 20 Eq. 262; 3 Washb. Real Prop. 586. In the present case, it having been found that the deed was merely an escrow, and there being no pretense that the conditions were ever performed, no title passed to the grantee by the subsequent delivery of the deed to him. * * * It being thus plain that no title passed to the grantee, the only remaining question is whether Eliza is estopped to maintain her rights by the judgment in the action of replevin, whereby he established against her his right to the possession of the deed. In

the first place, it is clear that the other demandant, Henry W. Daggett, cannot be affected by any such estoppel. He was no party to the action of replevin. The defense of estoppel, if available against Eliza, does not extend to him. But there is no estoppel, even as to her. The title to the land could not be tried directly in the action of replevin, which lies only for personal chattels. Brown v. Wallis, 115 Mass. 156. Even though the title to the land might be inquired into incidentally, for the purpose of determining the ownership of chattels, it is sufficient to say, in the present case, that it is not shown, either by the record or by parol evidence, that the title to the land was, in fact, put in issue, tried, passed upon, or in any way brought in question, in that action, and the judgment therein cannot have the effect to estop her for asserting her true title now. Gilbert v. Thompson, 9 Cush. 348; Dutton v. Woodman, 9 Cush. 361, 57 Am. Dec. 46; Burlen v. Shannon, 99 Mass. 200, 96 Am. Dec. 733; Hanham v. Sherman, 114 Mass. 19; White v. Chase, 128 Mass. 158; Russell v. Place, 94 U. S. 606, 24 L. Ed. 214; Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Howlett v. Tarte, 10 C. B. (N. S.) 813."

In Patrick v. McCormick, supra, the Supreme Court of Nebraska uses the following language: "Delivery is essential to the validity of a deed, and it takes effect only from the delivery. The deed may be delivered to the grantee himself, or to any other person authorized by him to receive it. An escrow is a conditional delivery to a stranger, to be kept by him until certain conditions are performed, and then to be delivered to the grantee (4 Kent. Com. 454), but until the condition is performed and the deed delivered over the estate does not pass but remains in the grantor."

In the later case of Matteson et al. v. Smith et al., 61 Neb. 761, 86 N. W. 472, the same learned court said: "Authorities need not be cited to show that a deed placed in the hands of a third person for delivery to the grantee when he shall perform some condition is not legally effective, but is a mere nullity, if delivered by the depositary, or obtained from him in any way, without full compliance with the conditions specified."

In Jackson v. Rowley, supra, the Supreme Court of Iowa says: "Plaintiff's real contention is that the delivery of the deed to Clough

in escrow vested the title in fee simple in the Porters, as counsel say, 'subject only to a defeasance by a failure on their part to carry out the contract between them and Rowley, which was the condition of the special delivery.' The claim finds little, if any, support in the authorities. We understand the general rule to be well settled that when a deed is delivered to a third person, to be by him held until the performance of certain conditions by the grantee, the title does not vest in the latter until the conditions are performed. Devl. Deeds, 323. The following are a few of the later decisions in support of the rule above laid down: Gaston v. City of Portland, 16 Or. 255, 19 Pac. 127; Hayden v. Meeks (Ark.) 14 S. W. 864; Steamboat Co. v. Moragne, 91 Ala. 610, 8 South. 867; Daggett v. Daggett, 143 Mass. 516, 10 N. E. 311; Quick v. Milligan, 108 Ind. 419, 9 N. E. 392; Taft v. Taft, 59 Mich. 185, 26 N. W. 426; Patrick v. McCormick, 10 Neb. 1, 4 N. W. 312; Knopf v. Hansen, 37 Minn. 215, 33 N. W. 781. See, also, 6 Am. & Eng. Enc. Law, p. 867. This court has also recognized this general rule. Haven v. Kramer, 41 Iowa, 387; Logsdon v. Newton, 54 Iowa, 448, 6 N. W. 715. Counsel insist that if the conditions of the contract had been performed, then from that time the deed ceased to be held as an escrow, and the custodian became the agent of the grantee. That question, and others argued, we need not determine. The conditions were never performed on the part of Porter. He never became entitled to the deed, and hence had no interest in the land which he could convey to Byam & Jackson. * * * Plaintiffs were grossly negligent in not ascertaining the real facts touching Porter's interest in the land before canceling the mortgage they held against him."

It will thus be seen that, under the authorities, neither the first deed from the plaintiff to Musson nor the second deed executed by plaintiff and his wife became effective to pass the title to the land in controversy, and the court's finding that the deed lawfully came into the possession of said Musson is clearly not supported by the evidence. It is quite clear, also, from the evidence that Musson never, in fact, complied with the terms of his oral agreement by delivering to Hoese for the plaintiff or to the plaintiff himself the personal property he was to deliver as a condition upon which he should be entitled to the delivery of a deed by the depositary of the same.

It is contended by the respondent that Musson was only to deliver to the plaintiff, Schmidt, by the terms of the written contract his interest in the quarry and the personal property connected therewith, but it would seem by the subsequent oral agreement testified to by Hoese that there were certain notes, books of account, and other personal property to be delivered by Musson before he would be entitled to the delivery of the deed, and that none of the property was ever turned over to Hoese for the plaintiff or to the plaintiff himself. Musson, therefore, having obtained the deed to the property without having delivered up to Hoese, acquired no title to the property, and, of course, he having none, neither his widow nor legatees are in a position to assert any.

The only remaining question, therefore, is: Did the Iowa Loan & Trust Company acquire a lien upon the property by virtue of its mortgage. Under the authorities it would seem that it acquired no lien thereon, for the reason that Musson, at the time he executed the mortgage, had no title, and his apparent title was based upon a quitclaim deed. In Parker v. Randolph, 5 S. D. 549, 59 N. W. 722, 29 L. R. A. 33, this court held that a party claiming under one who claimed title through a quitclaim, his deed did not make him a bona fide holder of the title to the mortgaged premises. In other words, that a party claiming under such a title is presumed to have knowledge of all outstanding equities, as against his grantor. The law as laid down in that case has recently been affirmed by this court in the case of Fowler v. Will, 19 S. D. 131, 102 N. W. 598. It is hardly necessary to state that if the Iowa Loan & Trust Company could not claim protection as purchasers in good faith for value, they cannot claim protection as a mortgagee in good faith and for value, and its lien upon the property must fail, as well as the title of the other defendants.

The judgment of the circuit court is reversed.