Argued June 23, affirmed July 18, 1916.
Rehearing granted September 19, reargued December 12, 1916.
Reversed and remanded February 27, 1917.

# FOULKES v. SENGSTACKEN.*

(158 Pac. 952; 163 Pac. 311.)

**Frauds, Statute of—Deeds—Escrow—Verbal Condition.**

1. The deposit of a deed by the grantor with a third party for delivery to the grantee upon payment of the price for the land is in escrow, though the condition of the deposit rests in parol, not being rendered nugatory by the statute of frauds.

[As to deeds delivered in escrow, see note in 53 Am. St. Rep. 555.]

**Frauds, Statute of—Operation and Effect—Sale—Option.**

2. Where there was a sale of land and a deed delivered in escrow to a third party to await payment, if proof of the escrow agreement were excluded, because oral, by the statute of frauds, the transaction was not changed from a sale to an option ending with the grantor's life.

**Escrows—Death of Grantor—Effect.**

3. The death of a grantor cannot affect the subsequent delivery of his deed in escrow by the depositary on the fulfillment of the conditions.

## ON REHEARING.

**Escrows—Depositaries—Agents.**

4. Where vendor, pursuant to contract of sale, deposits deed with her attorney for ultimate delivery to vendee upon latter's compliance with terms of contract, and such attorney holds the deed solely as the representative of the vendor, the transaction does not amount to an escrow.

**Escrows—Construction—Intention.**

5. In determining whether or not the delivery of a deed to a third person constituted an escrow, the intention of the parties should govern.

**Escrows—Construction—Intention.**

6. While it is not essential to establish an escrow that the parties use the word "escrow," yet when they do employ that term, it in-

---

*As to effect of deed delivered in escrow as satisfying the statute of frauds, see note in 43 L. R. A. (N. S.) 390.

On proof of escrow agreement by parol, see notes in 18 L. R. A. (N. S.) 227; 31 L. R. A. (N. S.) 606.

On necessity of strict compliance with condition of instrument placed in escrow, see note in L. R. A. 1916A, 502.

On effect of deed delivered in escrow to further security for a mortgage, see notes in 2 L. R. A. (N. S.) 627; L. R. A. 1915B, 492.

REPORTER.

dicates more clearly than any other word the actual intention of the parties.

### Mortgages—Escrows—Operation and Effect.

7. An agreement, whereby vendor deposited deed with her attorney to be delivered to vendee upon latter's compliance with terms of sale contract, cannot be treated as a mortgage for unpaid balance of purchase price due from vendee, where the defendant expressly pleaded such agreement as an escrow and the evidence indicated that the parties regarded it as an escrow.

### Escrows—Nature and Requisites.

8. Where a written instrument importing a legal obligation is deposited by grantor with a third party to be kept by the depositary until the grantee pays a stipulated sum and then to be delivered over to the grantee, an escrow is created.

### Escrows—Operation and Effect—Revocation.

9. Where grantor deposits a deed in escrow to be delivered to grantee upon performance of conditions, the deed is beyond the control of the grantor until the expiration of the time allowed for the performance of the condition, and cannot be recalled without the consent of the grantee until the default of the latter.

### Escrows—Depositaries.

10. Strictly speaking, the depository of an escrow is not the agent of either the grantor or grantee, but is rather the trustee of an express trust.

### Escrows—Time of Taking Effect—Relation Back to First Delivery.

11. A deed deposited in escrow does not operate to convey title until performance of the conditions entitling the grantee to delivery by the depositary, but where the grantor becomes incapacitated after delivery to depositary and before time fixed for performance of condition, a fiction is resorted to by making the instrument the deed of the grantor from the time of delivery to the depositary.

### Deeds—Delivery to Third Person—Time of Taking Effect.

12. Where a deed is signed and delivered to a depositary with directions to deliver it to grantee upon death of grantor, the instrument, even in the absence of contract and consideration, will operate to convey title if the grantor at time of delivery parted with control and dominion over the writing, such instrument being regarded as the present act of the grantor.

### Deeds—Delivery by Third Person—Relation Back to First Delivery.

13. Where a deed is delivered to a depositary, with directions to deliver it to grantee upon death of grantor and subsequent performance of some condition by grantee, the instrument is the present deed of the grantor at the time of delivery to depositary, and title thereupon passes to grantee, defeasible, however, if grantee fails to perform condition imposed upon him.

### Escrows—Nature and Requisites.

14. A pure escrow presupposes the existence of a valid contract with sufficient parties, a proper subject matter, and a consideration.

### Escrows—Nature and Requisites.

15. To constitute the deposit of a deed an escrow, there must be an actual valid contract of sale, in the absence of which the instrument, though in form a deed, is neither a deed nor an escrow.

### Escrows—Frauds, Statute of—Deeds—Validity.

16. An oral agreement for the sale of real estate, pursuant to which the vendor deposits a deed with a third person to be delivered to grantee upon performance by him of the conditions of the agreement, is void under statute of frauds, Section 808, L. O. L., and the deposit of such deed does not constitute an escrow.

### Frauds, Statute of—Contracts of Sale—Escrow Agreements.

17. A deed deposited with a third person to be delivered to vendee upon compliance with conditions of oral contract of sale, which does not contain all the terms of such oral contract, does not satisfy the provisions of Section 808, L. O. L., making void agreements for sale of real property not in writing.

### Frauds, Statute of—Part Performance—Payment of Purchase Price.

18. The bar of statute of frauds, Section 808, L. O. L., making void oral agreements for sale of lands, is not removed by part payment of purchase price or payment of taxes; such acts not constituting part performance.

### Frauds, Statute of—Escrows.

19. An escrow agreement for the deposit of a deed with a third person to be delivered to the vendee upon performance of conditions is not a contract of sale of real property, and is not required to be in writing under statute of frauds, Section 808, L. O. L.

### Evidence—Parol Evidence to Prove Escrows.

20. The delivery of a deed in escrow and the conditions of the deposit may be shown by parol evidence.

### Escrows—Authority of Depositary to Deliver.

21. Where vendor, pursuant to oral contract of sale, delivered deed to depositary to be delivered to vendee upon performance of conditions of contract, and thereafter there was no sufficient part performance by vendee to avoid statute of frauds, Section 808 L. O. L., making void oral agreements for sale of real property, the delivery of the deed to depositary was merely a continuing offer, which terminated upon death of vendee, so that thereafter the depositary had no authority to deliver deed to vendee upon subsequent performance of conditions by him.

### Vendor and Purchaser—Lien of Purchaser for Amounts Paid Under Void Contract.

22. In action to quiet title, where defendant claimed under deed delivered to him by depositary of an alleged escrow agreement, which was held void because the contract of sale under which deposit was made was oral and void under statute of frauds, Section 808, L. O. L., the defendant in absence of fraud, is entitled in equity to repayment of purchase price, taxes and interest, and is entitled to a lien for such amounts on the land.

From Coos: JOHN S. COKE, Judge.

Department 2.   Statement by MR. JUSTICE BENSON.

This is a suit by John M. Foulkes against Henry Sengstacken, Agnes R. Sengstacken, his wife, M. C. Horton, Daniel Ritzman, Henry Sengstacken Company, a corporation, John F. Hall, executor *de bonis non* of the last will and testament of Elizabeth Williams, deceased, John F. Hall and John F. Hall, executor of the last will and testament of James T. Hall, deceased. The facts are as follows:

On July 1, 1906, Elizabeth Williams, a widow, signed and acknowledged a bargain and sale deed conveying certain lands in Coos County to the defendant Henry Sengstacken. The agreed consideration to be paid therefor was $1,500. At the time of the making of the deed, Sengstacken paid her $500, and it was agreed that John F. Hall should hold the deed in escrow until the balance of the purchase price was paid, which was to be in two payments of $500 each, one and two years later, respectively. At the maturity of the first installment, Sengstacken paid only $250, and Hall called the attention of Mrs. Williams to the fact that he was in default, and she replied:

"Well, he is all right. Let the deed lay there, and when he pays it you can turn it over to him."

Mrs. Williams died on May 3, 1909, leaving a will wherein she devised to the plaintiff all real estate which she should possess at the time of her death. About two years later Sengstacken paid the balance due upon the land, including interest, and Hall delivered the deed to him. Thereafter there were two other deeds executed by the executor of her estate for the correction of errors in the description.

On January 27, 1914, plaintiff began this suit to cancel such deeds upon the ground that they were fraudulent and void and to quiet the title of property in him. From a decree in favor of defendants, plaintiff appeals.                    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Stoll & Hodge,* with an oral argument by *Mr. Dwight E. Hodge.*

For respondents there was a brief over the name of *Messrs. Peck & Peck,* with an oral argument by *Mr. Cassius R. Peck.*

MR. JUSTICE BENSON delivered the opinion of the court.

With reference to the assignments of error based upon the findings of fact, it may be said at the outset that, while the evidence is conflicting, there is ample testimony in the record to justify the results reached by the trial court, and we are not inclined, therefore, to disturb them.

1, 2. The principal contention of appellant upon the legal questions involved is that the deposit of the deed with J. F. Hall could not be an escrow, because the conditions of such deposit rest in parol, and therefore are rendered nugatory by the statute of frauds; and that, since this is so, the transaction was simply a continuing offer of sale which ended with the life of the grantor. This contention is untenable as to both propositions. In the first place, it has been definitely settled by this court that the terms of an escrow need not be in writing. In *Gaston* v. *City of Portland,* 16 Or. 255 (19 Pac. 127) Mr. Chief Justice LORD says:

"The intent of the grantor must govern, and this is to be derived from all the facts, circumstances, and

proof. Nor is it necessary that the condition upon which the deed is delivered in escrow be expressed in writing; it may rest in parol, or be partly in writing and in part oral. The rule that a contract in writing *inter partes* must be deemed to contain the entire agreement or understanding has no application in such case"—citing *Stanton* v. *Miller,* 58 N. Y. 193.

To the same effect is 1 Devlin on Deeds (3 ed.), Section 312a, which says:

"It is well settled that the condition upon which the deed is delivered in escrow may be proved by parol evidence. The statute of frauds has no application to such an agreement, ordinarily, nor is it affected by the rule of evidence which prohibits a written contract from being contradicted or varied by parol evidence."

In *Cannon* v. *Handley,* 72 Cal. 133 (13 Pac. 315), the court uses this language:

"But it is said there was nothing in writing authorizing Cox to hold or deliver the deed. There is nothing in the statute which requires this to be in writing. The statute only requires a note or memorandum in writing as evidence of the contract. Nothing in it has reference to any arrangement for the delivery of the deed in escrow, or its subsequent delivery by the party so holding it to the grantee."

If it were otherwise, and proof of the escrow agreement were excluded by the statute of frauds, that condition would not change the nature of a transaction from a sale to an option. The cases cited by appellant are not inconsistent with the views here expressed, since in each of them the vital point was an effort to enforce specifically the terms of an executory parol contract, while the case at bar presents an executed contract wherein the escrow had been terminated by delivery prior to the commencement of this suit.

3. The conclusions we have reached practically dispose of the appeal, since the authorities are unanimously to the effect that the death of the grantor cannot affect the subsequent delivery of a deed in escrow by the depositary upon the fulfillment of the conditions: *Jackson* v. *Jackson,* 67 Or. 44 (135 Pac. 201, Ann. Cas. 1915C, 373) ; Devlin on Deeds (3 ed.), § 333a.

There are other assignments of error; but, since they are involved in the discussion already had, it is not regarded as necessary to discuss them.

The decree is affirmed.                    AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.

————————

Argued on rehearing December 12, 1916, reversed and remanded February 27, 1917.

ON REHEARING.

(163 Pac. 311.)

In Banc.    Statement by MR. JUSTICE HARRIS.

This is a suit to remove clouds cast upon a title by certain deeds.  A rehearing was granted, and we have therefore had the advantage of two oral arguments and the benefit of additional briefs on the rehearing. The decree of the Circuit Court was for the defendants, and the plaintiff appealed.  Elizabeth Williams was the owner of a tract of land consisting of mud flats, which were covered and uncovered by the flow and ebb of every tide.  Under date of July 21, 1906, she signed a writing in the form of a warranty deed purporting to convey the land to Henry Sengstacken ''for the consideration of the sum of fifteen hundred

dollars,'' and she then delivered the instrument to John F. Hall. It will not be necessary at this time to notice some additional deeds mentioned in the pleadings. The defendants allege that the deed was placed in the hands of Hall as an escrow pursuant to an agreement between Elizabeth Williams and Henry Sengstacken. The agreement relied upon was oral, and there was no writing except the deed. John F. Hall had for some time acted as the attorney and business adviser for Elizabeth Williams, and in that capacity he conducted the negotiations for the sale of the land for her. It was agreed that Elizabeth Williams would sign a deed and place it in the hands of John F. Hall; that Sengstacken would pay $1,500 for the land, $500 to be paid upon delivery of the deed to Hall, $500 with interest at the end of one year and the remaining $500 with interest in two years, and Hall would then deliver the deed to Sengstacken. Sengstacken testified that ''at my request the deed was placed in escrow,'' and that ''the deed was to be left with John F. Hall in escrow to be delivered to me when the balance of the payments were made.'' Hall says that:

''The deed was left with me to be held until he [Sengstacken] made the payments, the deferred payments—there was $1,000 to be paid—and I was to deliver the deed to him in two years upon the payment of this money.''

Sengstacken paid the first installment of $500, and within a year paid an additional $250 to Elizabeth Williams, but did not pay the balance of the second installment when it became due. Hall testified that he told Elizabeth Williams of the default in the payment, and that she said:

" 'He is all right; let the deed lay there, and when he pays you you can turn it over to him.' She said, 'If he don't pay it, the land is not worth much more than what I got anyhow,' and she instructed me to hold the deed, and deliver it whenever he paid it, but to extend the time," and, "As I said before, when he was behind, I spoke to her, and she told me to let the matter lay, and whenever he paid the amount to deliver the deeds to him."

Elizabeth Williams died on May 1, 1909, leaving a will which devises unto John M. Foulkes all the real estate of which the testatrix "may die seised." In July, 1911, Sengstacken paid $750, with interest, to Hall and received the deed.

FORMER OPINION OVERRULED.
REVERSED AND REMANDED WITH DIRECTIONS.

For appellant there was a brief over the names of *Messrs. Stoll & Hodge* and *Mr. Woodson T. Slater*, with oral arguments by *Mr. Dwight E. Hodge* and *Mr. Slater*.

For respondents there was a brief over the name of *Messrs. Peck & Peck*, with an oral argument by *Mr. Cassius R. Peck*.

MR. JUSTICE HARRIS delivered the opinion of the court.

4. If Hall held the instrument solely as the attorney and representative of Elizabeth Williams the transaction did not in any event amount to an escrow: *Campbell* v. *Thomas*, 42 Wis. 437 (24 Am. Rep. 427); *Kopp* v. *Reiter*, 146 Ill. 437 (34 N. E. 942, 37 Am. St. Rep. 156, 22 L. R. A. 273); *Stanton* v. *Miller*, 58 N. Y. 192; *Peters* v. *Strauss* (Tex. Civ. App.), 132 S. W. 956; *Day* v. *Lacasse*, 85 Me. 242 (27 Atl. 124): *King*

v. *Upper,* 57 Wash. 130 (106 Pac. 612, 1135, 31 L. R. A. (N. S.) 606) ; 1 Devlin, Real Estate (3 ed.), § 324.

5, 6. While the evidence may afford some ground for the contention that the alleged deed was delivered to Hall simply as the agent of Elizabeth Williams, nevertheless we shall assume that all the parties contemplated that Hall was something more than the mere agent of Elizabeth Williams. The character of a transaction generally depends upon the intention of the parties and if possible the intention should govern. While it is not essential that the parties use the word "escrow" yet when they do employ that term it indicates more clearly than any other word the actual intention of the parties: *Gaston* v. *Portland,* 16 Or. 255, 260 (19 Pac. 127) ; *Bronx Inv. Co.* v. *National Bank of Commerce,* 47 Wash. 566 (92 Pac. 380) ; 10 R. C. L. 623; 16 Cyc. 565.

7. The evidence makes it clear that the parties intended for Hall to hold the writing as an escrow for they always spoke of it as an escrow; all the circumstances indicate that they regarded it as an escrow; the defendants expressly plead that it was an escrow, and, hence, there can be no room for the contention that the instrument should be treated as a mortgage. The agreement and the delivery to Hall either created an escrow or it amounted to nothing. If the circumstances did not produce an escrow they did not give rise to a mortgage. We shall therefore assume that Elizabeth Williams and Henry Sengstacken orally agreed that the former would make a deed and deliver it to Hall who was to hold the instrument as a disinterested depositary and then deliver it to Sengstacken if the latter paid $500 at once, $500 with interest at the end of one year and $500 with interest at the end of two years; that the deed was delivered

to Hall pursuant to the oral agreement; and that Sengstacken made the initial payment and paid $250 on the second installment but failed to pay the remainder of the purchase price when it became due. We shall also assume that the time for payment was extended with the consent of Elizabeth Williams: *Scott* v. *Hubbard,* 67 Or. 498, 506 (136 Pac. 653). The ultimate question for decision on these assumed facts is whether the death of Elizabeth Williams revoked the authority of Hall to deliver the deed. The defendants argue that when Sengstacken paid the remainder of the purchase price and received the conveyance he became vested with the title even though Elizabeth Williams had been dead about two years. The plaintiff contends that the authority of Hall terminated with the death of Elizabeth Williams and that therefore all subsequent acts done by Hall were void.

8. If it be assumed that the oral agreement to sell the land was valid then it necessarily follows that the agreement to sell and the delivery of the deed to Hall created an escrow for the reason that every element essential for the creation of an escrow can be found. A written instrument importing a legal obligation was deposited by the grantor with a third party to be kept by the depositary until the grantee paid a stipulated sum, and then to be delivered over to the grantee: 10 R. C. L. 621; 16 Cyc. 561; 11 Am. & Eng. Enc. of Law (2 ed.) 333.

9, 10. Until the expiration of the time allowed to the grantee for the performance of the condition the deed is beyond the control of the grantor and unless the grantee consents, the deed cannot be recalled by the grantor until the grantee defaults. Strictly speaking the depositary is not the agent of the grantor nor is he the agent of the grantee but he is rather the trustee

of an express trust.   A consummated escrow involves two deliveries: (1) To the depositary; and (2) to the grantee.

11. The general rule is that the instrument deposited does not become a deed and operate to convey title until the second delivery or perhaps more accurately speaking, until the performance of the condition: *Flanagan* v. *Great Cent. Land Co.*, 45 Or. 335, 340 (77 Pac. 485); *May* v. *Emerson*, 52 Or. 262 (96 Pac. 454, 96 Pac. 1065, 16 Ann. Cas. 1129); *Wheelwright* v. *Wheelwright*, 2 Mass. 446 (3 Am. Dec. 66); *Fitch* v. *Bunch*, 30 Cal. 208; 1 Devlin, Real Estate (3 ed.), § 328. If, however, the grantor becomes incapacitated between the first delivery and the time fixed for the performance of the condition then a fiction is resorted to in order to prevent injustice by making the instrument the deed of the grantor from the first delivery. The law requires that the delivery shall be the act of the grantor and since his death would revoke the authority of the depositary and the intention of the parties would be defeated if a second delivery was required to vest the title, the law will from necessity consider that the second relates back to the first delivery and the instrument is deemed to be the deed of the grantor from the first delivery: *Campbell* v. *Thomas*, 42 Wis. 437 (24 Am. Rep. 427); *Clark* v. *Campbell*, 23 Utah, 569 (65 Pac. 498, 90 Am. St. Rep. 716, 54 L. R. A. 508); *Flanagan* v. *Great Cent. Land Co.*, 45 Or. 335, 341 (77 Pac. 485); *Jackson* v. *Jackson*, 67 Or. 44 (135 Pac. 201, Ann. Cas. 1915C, 373); *May* v. *Emerson*, 52 Or. 265 (96 Pac. 454, 96 Pac. 1065, 16 Ann. Cas. 1129); *Bronx Inv. Co.* v. *National Bank of Commerce*, 47 Wash. 566 (92 Pac. 380); *Wellborn* v. *Weaver*, 17 Ga. 267 (63 Am. Dec. 235); *Stan-*

*ton* v. *Miller,* 58 N. Y. 192; 10 R. C. L. 267; 1 Devlin, Real Estate (3 ed.) § 328.

12. Before proceeding with the discussion it is proper to call attention to a certain class of cases which though relied upon by the defendants, must not be permitted to enter into our calculations. A person may sign a deed and deliver it to a third party with directions to deliver it to the grantee upon the death of the grantor, and, even though there is neither a contract nor any consideration, the instrument will operate to convey title if the grantor at the time of delivery parted with control and dominion over the writing, on the theory that as between the grantor and grantee it is the deed of the grantor presently: *Campbell* v. *Thomas,* 42 Wis. 437 (24 Am. Rep. 427); *Fitch* v. *Bunch,* 30 Cal. 208; *Martin* v. *Flaharty,* 13 Mont. 96 (32 Pac. 287, 40 Am. St. Rep. 415, 19 L. R. A. 242); *Seibel* v. *Higham,* 216 Mo. 121 (115 S. W. 987, 129 Am. St. Rep. 502); *Wheelwright* v. *Wheelwright,* 2 Mass. 446; *Hoffmire* v. *Martin,* 29 Or. 240 (45 Pac. 754); *Reeder* v. *Reeder,* 50 Or. 204, 210 (91 Pac. 1075); *Foote* v. *Lichty,* 60 Or. 542, 554 (120 Pac. 398); 16 Cyc. 563; 10 R. C. L. 265; 8 R. C. L. 994 and 995; 1 Devlin, Real Estate (3 ed.) § 319. Where the instrument becomes the present deed of the grantor at the moment of the first delivery, title, as between the immediate parties, is at once passed to the grantee although his right of possession is postponed until the death of the grantor. As stated in *Arnegaard* v. *Arnegaard,* 7 N. D. 475 (75 N. W. 797, 41 L. R. A. 258):

"The transaction does not vest in the grantee a fee in possession but only a fee in remainder after the life estate of the grantor, which by implication is carved out of the fee, has terminated."

13. There is also a class of cases where without any contract between the parties the second delivery depends not only upon the death of the grantor but also upon the subsequent doing of some act by the grantee, as the payment of money; but in this class of cases it is likewise considered that the instrument is the present deed of the grantor at the time of the first delivery and that title is at once passed, to be defeated, however, if the grantee fails to perform the condition imposed upon him. In *Nolan* v. *Otney,* 75 Kan. 311 (89 Pac. 690, 9 L. R. A. (N. S.) 317), the court says:

"To call the requirement imposed upon the grantee a condition precedent to the vesting of title is to beg the question; if the title is regarded as passing with the delivery of the instrument to the custodian it is a condition subsequent, upon the nonperformance of which the title will revert. So far as the grantor and his heirs are concerned there is no possible hardship in considering that when he has placed the deed beyond his recall—when in spite of anything he can do it must ultimately become fully effective—it becomes operative in contemplation of law at once."

*Jackson* v. *Jackson,* 67 Or. 44 (135 Pac. 201, Ann. Cas. 1915C, 373), is much like this class of cases and it is worth observing that in the extended note appended to this case in Ann. Cas. 1915C, 373, the editor says that the weight of authority is to the effect that:

"The deposit of a deed to be delivered on the performance of a condition after the death of the grantor stands on the same footing as a deposit for delivery unconditionally after the grantor's death."

The circumstance that the instrument is deemed to be the deed of the grantor presently and the further fact that a contract to convey is not necessary differentiate these cases from those involving pure escrows.

14, 15. A pure escrow presupposes the existence of a valid contract with sufficient parties, a proper subject matter, and a consideration. There must be an actual contract of sale on the one side and of purchase on the other and until there is such a contract the instrument executed by the proposed grantor, though in form a deed is neither a deed nor an escrow: *Davis* v. *Brigham,* 56 Or. 41 (107 Pac. 961, Ann. Cas. 1912B, 1340); *Clark* v. *Campbell,* 23 Utah, 569 (65 Pac. 496, 90 Am. St. Rep. 716, 54 L. R. A. 508); *Fitch* v. *Bunch,* 30 Cal. 208; *Bronx Inv. Co.* v. *National Bank of Commerce,* 47 Wash. 566 (92 Pac. 380); *Anderson* v. *Messenger,* 158 Fed. 250 (85 C. C. A. 468); *Bosea* v. *Lent,* 44 Misc. Rep. 437 (90 N. Y. Supp. 41); *King* v. *Upper,* 57 Wash. 130 (106 Pac. 612, 1135, 31 L. R. A. (N. S.) 606); *Stanton* v. *Miller,* 58 N. Y. 192; 1 Devlin, Real Estate (3 ed.) § 313; 16 Cyc. 563.

16. It is not enough that there be an agreement but the agreement must be a valid one. Our statute provides that an agreement for the sale of real property is void unless it is in writing and "evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law": Section 808 L. O. L. Since the statute of frauds requires that the contract of sale shall be in writing it necessarily follows that unless there is such a writing, the agreement to sell the land is not only void but it cannot even be shown by evidence, and therefore there is no technical escrow: *Cagger* v. *Lansing,* 43 N. Y. 550; *Nichols* v. *Oppermann,* 6 Wash. 618 (34 Pac. 162); *Kopp* v. *Reiter,* 146 Ill. 437 (34 N. E. 942, 37 Am. St. Rep. 156, 22 L. R. A. 273).

17. It cannot be held that the instrument signed by Elizabeth Williams and delivered to Hall satisfies the

statute of frauds for the reason that the writing does not contain all the terms of the verbal agreement: *Cooper* v. *Thomason,* 30 Or. 161, 174 (45 Pac. 295); *Campbell* v. *Thomas,* 42 Wis. 437 (24 Am. Rep. 427); *Wier* v. *Batdorf,* 24 Neb. 83 (38 N. W. 27); *Day* v. *Lecasse,* 85 Me. 242 (27 Atl. 124); *Moore* v. *Ward,* 71 W. Va. 393 (Ann. Cas. 1914C, 263, 43 L. R. A. (N. S.) 390, 76 S. E. 807); *Cagger* v. *Lansing,* 43 N. Y. 550; 10 R. C. L. 629.

18. No improvements were made upon the land; nor did Sengstacken enter into possession of the premises. He did nothing prior to the death of the grantor except to pay the taxes and part of the purchase price, but payment of part of the purchase price does not remove the bar of the statute of frauds: *Cooper* v. *Thomason,* 30 Or. 161, 174, 176 (45 Pac. 295); *Farrin* v. *Matthews,* 62 Or. 517, 522 (124 Pac. 675, 41 L. R. A. (N. S.) 184); *Roadman* v. *Harding,* 63 Or. 122, 126 (126 Pac. 993); *Cunningham* v. *Friendly,* 70 Or. 222, 231 (139 Pac. 928, 140 Pac. 989); *Cagger* v. *Lansing,* 43 N. Y. 550, reversing 57 Barb. 421.

19, 20. The statute of frauds does not contemplate that the delivery of a deed to a depositary with a statement of the condition upon which it is to be delivered to the grantee must be in writing. Merely handing a writing in the form of a deed to a third party with directions to deliver it to the grantee is not a contract to sell on the one hand and to purchase on the other and this is the reason for the rule that both delivery and the conditions of the deposit may be shown by parol. The agreement to sell and to buy is one thing while the delivery of the deed to a third party and the directions to him are another and consequently the rule that a contract made in writing *inter partes* must be deemed to contain the entire agreement does not

apply: *Gaston* v. *Portland,* 16 Or. 255, 261 (19 Pac.
127); *Campbell* v. *Thomas,* 42 Wis. 437 (24 Am. Rep.
427); *Nichols* v. *Oppermann,* 6 Wash. 618 (34 Pac.
162); *Bronx Inv. Co.* v. *National Bank of Commerce,*
47 Wash. 566 (92 Pac. 380); *Stanton* v. *Miller,* 58
N. Y. 192; *Fred* v. *Fred,* 50 Atl. 776; 10 R. C. L. 624;
16 Cyc. 565; 1 Devlin, Real Estate (3 ed.) 551.

21. Since there was no valid, binding and enforce-
able agreement to sell the land and not a sufficient
part performance to avoid the statute of frauds it
follows that there was no technical escrow; and, there-
fore, the delivery of the instrument, in the form of a
deed, to Hall was in contemplation of law merely the
voluntary act of Elizabeth Williams and amounted to
nothing more than a continuing offer which necessarily
terminated with the death of the offerer. The death
of Elizabeth Williams at once produced the death of
the writing held by Hall and no subsequent act of
Sengstacken could resurrect the writing and make it
a living deed: *Campbell* v. *Thomas,* 42 Wis. 437 (24
Am. Rep. 427); *Bronx Inv. Co.* v. *National Bank of
Commerce,* 47 Wash. 566 (92 Pac. 380); *Wellborn* v.
*Weaver,* 17 Ga. 267 (63 Am. Dec. 235); *Holland* v.
*McCarthy,* 173 Cal. 597 (160 Pac. 1069).

22. The plaintiff is entitled to a decree canceling all
the deeds mentioned in the complaint. Sengstacken,
however, paid $750 to Elizabeth Williams, $750 with
interest to Hall and the taxes on the land. The writer
thinks that plaintiff should repay the $750 received by
Elizabeth · Williams together with the taxes paid by
Sengstacken and that on the authority of *De Bow* v.
*Wollenberg,* 52 Or. 404 (96 Pac. 536, 97 Pac. 717),
Sengstacken cannot look to the plaintiff for the $750
and interest paid to Hall; but the majority of the
court are of the opinion that in equity the plaintiff

should repay to Sengstacken the $750 paid to Elizabeth Williams, the $750 and interest paid to Hall, together with the amount of the taxes and that Sengstacken should have a lien on the land as security for the repayment.

The evidence conclusively disproves the charges of fraud made by plaintiff. At all times the defendants acted in good faith, and they honestly believed that they had a right to do all that they did.

This controversy presents some features which naturally appeal to the sympathy of a chancellor and yet courts cannot declare that contracts are valid when the statute law in positive and unequivocal terms pronounces them invalid. As has been aptly said, "hard cases are the quicksands of the law." In the long run it is better to follow the law and avoid the quicksands. The record does not disclose the amount of the taxes paid by Sengstacken and consequently it will be necessary to remand the cause to the Circuit Court with instructions to ascertain the amounts paid. The decree is reversed and the cause is remanded to the Circuit Court for the purpose of ascertaining the amount of the taxes paid by Sengstacken, without costs to any party in either court.

FORMER OPINION OVERRULED.<br>REVERSED AND REMANDED WITH DIRECTIONS.

MR. JUSTICE BURNETT, concurring in part, delivered the following opinion:

I concur in the reasoning of Mr. Justice HARRIS to the effect that an escrow in a case like this must be supported by an agreement to sell real property conforming to the statute of frauds on that subject. The defendants pray only for a decree dismissing the suit and for costs and disbursements, but do not ask for

further relief in general or for the particular relief of the recovery of money said to have been paid by Sengstacken. No counterclaim has been stated with that end in view. Indeed, in the absence of any valid agreement within the statute of frauds for the sale of the land, no such counterclaim could be interposed in this suit. All that appears from the evidence is that during the lifetime of Elizabeth Williams, Sengstacken paid to her $750, and that several years after her death he paid to John F. Hall, the depositary of the deed, $750 more. The only way in which he can recover these payments is by an action for money had and received which is a plain, speedy and adequate remedy at law. While Mrs. Williams still lived the action would have lain against her. The cause of action would survive against her personal representatives under Section 379, L. O. L. In no case could Sengstacken who paid the money have instituted a suit against her, because he had no contract for the purchase of the land; neither did he enter into possession of the same. Being unable to institute a suit thereon as distinguished from an action at law, the demand for money paid could not be made the subject of a counterclaim in this suit in equity to remove a cloud for it is said in Section 401, L. O. L.:

"The counterclaim of the defendant shall be one upon which a suit might be maintained by the defendant against the plaintiff in the suit."

Having a plain, speedy and adequate remedy at law for the recovery of the money, the party paying the same must look to it and cannot expect a recovery in this suit, especially where that relief has not been prayed for.

The decree of the Circuit Court should be reversed and one entered for the plaintiff according to the prayer of his complaint.