FRANK S. BEAMER, Conservator,

*v.*

COLUMBUS L. MORRISON.

*Opinion filed June 23, 1904.*

APPEALS AND ERRORS—*chancellor's findings of fact will not be lightly disturbed.* A finding of the chancellor upon the question of mental capacity of the grantor in a deed, based upon conflicting opinions of witnesses heard in open court, will be upheld, on appeal, unless clearly contrary to the weight of the evidence.

WRIT OF ERROR to the Circuit Court of Knox county; the Hon. GEORGE W. THOMPSON, Judge, presiding.

WILLIAMS, LAWRENCE & WELSH, for plaintiff in error.

W. T. SMITH, and J. J. WELSH, for defendant in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery filed by the plaintiff in error conservator against the defendant in error, C. L. Morrison, praying for a decree finding and declaring a certain deed executed on the 21st day of March, 1902, by one Jacob England, the ward of the said conservator, to the defendant in error, purporting to convey to said defendant in error one hundred and forty acres of land out of the north-east quarter of section 6, town 11, north, range 3, east, in Knox county, to be void, on the grounds the said Jacob England was lacking in mental capacity to execute the instrument and that there was no consideration for the conveyance. An answer was filed denying the allegations of the bill with relation to the mental condition of said Jacob England, and replication was filed to the answer. By leave of the court the defendant in error filed a cross-bill, in which he averred that said Jacob England, on the 10th day of April, 1896, being then in full possession of his mental faculties, in consideration of the love and affection for said Morrison,

complainant in the cross-bill, and for a good and valu-
able consideration, executed a deed, in which his wife,
now deceased, joined, conveying to said Morrison said
one hundred and forty acres of land; that after said deed
had been duly signed and acknowledged by said England
and wife it was delivered by said England to said Mor-
rison and was accepted by him, and was placed for safe
keeping in the Farmers' National Bank of Knoxville,
Illinois, and was not recorded; that said deed remained
in the possession of the said bank until about June 19,
1901, when one John R. Young, by means of false repre-
sentations, secured possession thereof and destroyed it;
that the said deed reserved a life estate in the grantors,
and that the possession and control of the land remained
in them; that Mrs. England has since died and Jacob
England has not re-married; that said Morrison was re-
ceived into the family of the said England and wife when
a mere boy, and lived there as a member of the family
and a foster-son until he reached the age of twenty-eight
years, without other remuneration than his board and
clothes; that he endeavored to merit the affection of Mr.
and Mrs. England, and that the deed of April 10, 1896,
was executed as a recognition and reward for his faith-
ful services and as expressing the love and affection of
his foster-parents for him. The prayer of the cross-bill
was that the deed of April 10, 1896, should be established
and confirmed and the cross-petitioner be decreed to be
the owner of the premises, subject to the use, occupation
and control of the same by said Jacob England during
his lifetime. Answers were filed to the cross-bill by the
plaintiff in error, as conservator of said Jacob England,
and by Jacob England by a guardian *ad litem.* These
answers denied the allegations of the cross-bill, and gen-
eral replications were filed to them.

The parties voluntarily agreed that the issues under
the original and cross-bill should be tried separately,
and that the issue made under the cross-bill should be

first tried and decided, and that the original bill should await the determination of the hearing of the cross-bill. In pursuance of this agreement the parties presented their proofs in support of and in refutation of the averments of the cross-bill and submitted that cause to the chancellor, and a decree was rendered finding that Morrison, the complainant in the cross-bill, should be and is estopped by his conduct *in pais* to ask the aid of equity to confirm his title to the land under and by virtue of the deed of April 10, 1896.

The acts which were deemed to create the estoppel were, that within a few days after the death of Mrs. England, which occurred on June 4, 1901, said Jacob England requested that the deed which he and his wife had executed on the 10th day of April, 1896, purporting to convey the one hundred and forty acres of land to Morrison, and which was on deposit in the First National Bank in escrow, should be delivered to him in consideration that he would deliver his note to Morrison for the sum of $1000, payable on the first day of September, 1901, and that Morrison consented and accepted the note, or the proceeds of the sale of the note; hence he was deemed estopped to ask that a court of equity should decree that he held title to the land by virtue of that conveyance. Whether he obtained title by the later conveyance from England,—that of March 21, 1902,—remained to be determined on the hearing of the original bill.

The original bill averred that said England had not mental capacity to make the second deed, and that issue came on for hearing before the same chancellor who had heard and determined the issues made under the cross-bill. On the hearing the plaintiff in error conservator offered in evidence the cross-bill, the answers thereto, the testimony which the respective parties had produced on the trial of the cross-bill, and the decree rendered by the court in that cause, but the chancellor refused to receive the same in evidence. It is urged the chancellor

erred in this ruling and that the decree should be reversed for this reason. We do not assent to this view. The issues under the cross-bill and under the original bill were entirely distinct. Morrison, the complainant in the cross-bill, sought thereby to have it decreed that the deed executed by Jacob England and his wife on April 10, 1896, invested him with title to the one hundred and forty acres of land. The mental capacity of Jacob England to execute that deed was not questioned or involved in any way. The prayer of the cross-bill was denied, for the reason that it was shown that the deed was delivered to the bank to hold in escrow, and that the complainant in the cross-bill, at the request of the grantor in the deed, accepted a note of the grantor in the sum of $1000 in lieu of the deed and agreed that the grantor should re-possess himself of the deed, and that the deed was destroyed under this agreement. Whether the defendant in error, Morrison, became seized of the title to the land subject to the life estate of the grantor by the deed executed by said Jacob England on March 21, 1902, was questioned by the original bill on the ground, alone, that the mind of said England had become so impaired that he was incapable of executing a valid and enforcible deed. Neither the cross-bill, the answer thereto, the evidence of the respective parties nor the decree of the court denying the prayer thereof had any pertinency to the issue of the mental capacity of Jacob England.

The second assignment of error is, that the chancellor refused to receive in evidence the testimony of John R. Young and Horace Ott, taken and heard on the trial of the issues under the cross-bill. The offer in evidence of the pleadings in the cross-bill, the testimony taken thereunder and the decree rendered therein was as a whole, but we have examined the assignment that the testimony of the said John R. Young and Horace Ott was refused. The witness John R. Young was produced on the hearing of the issues under the original bill and was fully

examined. The refusal to receive the testimony given by him on the trial of the cross-bill could not, therefore, have been prejudicial to the cause of the plaintiff in error. We have examined the testimony of Horace Ott taken and heard on the trial of the cross-bill. It had no relation whatever to the alleged mental incapacity of Jacob England, and could not have enlightened the court in the slightest degree upon that question.

But one question remains, and that is whether, as alleged by the plaintiff in error, the chancellor, under the evidence produced before him, should have decreed that the mind of Jacob England was so far impaired by weakness, old age or other cause that he was mentally incapable of executing a valid deed on the 21st day of March, 1902. Mrs. Susan England, wife of said Jacob England, died June 4, 1901. No children had ever been born to them. The defendant in error was taken into their family, as a member thereof, when but a child, and he lived with them as their foster-son until he was more than twenty-five years of age. The circumstances attending the execution of the deed of March 21, 1902, seem consistent only with the conclusion reached by the court that Jacob England had the requisite mental power to make the instrument. It appeared that he told those present at the signing and acknowledgment of the deed that he wanted the use and benefit of the land during all of his lifetime, and that at his death he wanted it to belong to the defendant in error, Morrison. The deed was first read to him by a Mr. Smith, who, it seems, had prepared it. Before signing it Mr. England asked Mr. Hamilton, the notary public, to again read the deed to him, as he wanted to know that the deed gave him a life interest in the property. Hamilton then re-read the deed, and the grantor told Hamilton he wanted to hold a life interest in the property and after his death he wanted to give it to Morrison. Mr. Hamilton then re-read the clause in the deed which provided that the "possession,

rents, profits and use of the land" should be reserved to
the grantor during his life. Mr. England then signed
and acknowledged the deed. The deed recited that it
was made "for and in consideration of love and affection
and one thousand (1000) dollars, for services rendered,"
and there seems no reason to doubt that the grantor
fully comprehended what he was doing, and the conse-
quences thereof, and that the deed, if carried into exe-
cution, will accomplish his desire and intention.

Quite a number of witnesses testified with relation to
the mental capacity of the testator. This testimony con-
sisted most largely of expressions of the opinion held by
the respective witnesses upon the question of his mental
condition. Substantially an equal number of witnesses
were produced by the respective parties. The weight
and value of an opinion advanced by a witness depend
largely upon the intelligence and capacity of the witness
to judge justly and fairly as to the subject matter of the
conclusion expressed by the witness. The chancellor who
saw and heard the witnesses had advantages that we
have not been favored with, to enable him to correctly
weigh their testimony. We are much impressed with the
testimony of certain of the witnesses who had known
Jacob England longer than the greater number of the
other witnesses who testified in the case. One of the
witnesses to whom we refer had known him since 1856;
another, who was fifty-five years of age, had known him
ever since he could recollect anybody; another, who was
fifty years old, had known England during all of the life
of the witness and had always lived within four miles
of him; another had known him since witness was a boy,
and had lived across the road from him since 1882, ex-
cept about three years; another had known him for forty
years, another for thirty years and another for twenty-
five years, and all of them regarded him as mentally
responsible and competent to transact business affairs.
We think the chancellor correctly interpreted the mean-

ing and weight of the testimony, and reached the correct
conclusion as to the truth of the contention to which the
evidence related.

The decree must therefore be affirmed.

*Decree affirmed.*