Argued September 11, decided September 30, 1913.

## JACKSON v. JACKSON.

(135 Pac. 201.)

**Wills—Form of Instrument—Warranty Deed.**

1. A warranty deed in regular form and executed as such but placed in escrow to be delivered after the grantor's death upon certain conditions cannot be treated as a will, especially where the testatrix expressly stated that she did not desire to make a will.

[As to what instruments are testamentary, see note in 89 Am. St. Rep. 486.]

**Escrows—Delivery to Depositary—Time When Delivery Takes Effect.**

2. Where the owner of land, who had been living thereon with her son, executed a warranty deed for the express purpose of assuring

him that he would become the owner thereof upon her death, in order that he might make needed repairs, and gave the deed to him to be placed in escrow until after her death and after he should make certain payments to her other children which equaled the consideration expressed in the deed, the deed was not delivered to the son at that time, but upon his tendering the payments after her death he became entitled thereto, and the delivery then related back to the date of the deed.

**Escrows—Relation Back of Delivery—Subsequent Death of Grantor.**

3. The fact that the payments upon which the delivery was conditioned were not made until after the death of the grantor does not vitiate the conveyance.

[As to the law of escrows, see note in 130 Am. St. Rep. 910.]

From Marion: WILLIAM GALLOWAY, Judge.

Department 1.   Statement by MR. JUSTICE RAMSEY.

This is a suit by Clarence Jackson against George W. Jackson, William A. Jackson, Joseph Jackson, Lavina Jones, John B. Jackson, Susan M. Harris, Andrew White, Estella Jackson, William A. Jackson, as administrator of the estate of Mary Jackson, deceased, and the Bank of Woodburn and J. M. Poorman, cashier of the Bank of Woodburn, to determine an adverse claim to the north half of the donation claim of Andrew Jackson and his wife, Mary Jackson, situated in Clackamas County, Oregon, and more particularly described in the complaint, containing 160 acres, and to require the defendants the Bank of Woodburn and J. M. Poorman to deliver to the plaintiff the deed of conveyance in their possession, claimed to belong to the plaintiff, etc.   The court below rendered a decree for the plaintiff.                           AFFIRMED.

For appellants there was a brief, with oral arguments by *Carson & Brown.*

For respondent there was a brief, with oral arguments by *Mr. Samuel T. Richardson* and *Mr. Grant B. Dimick.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

This is a suit in equity to determine an adverse claim to the north half of the donation land claim of Andrew Jackson and Mary Jackson, in Clackamas County, Oregon, containing 160 acres, and to require the defendants to set forth their adverse claim to said real property, and to require the bank defendant and its cashier, J. M. Poorman, to deliver to the plaintiff a deed to said premises in their possession, and for general relief. The Bank of Woodburn and J. M. Poorman, defendants, did not appeal.

On the 23d day of December, 1908, and for many years prior to that date, Mary Jackson was the owner in fee of 160 acres of land above described. She was the widow of Andrew Jackson, deceased. Her husband, Andrew Jackson, died in April, 1874. Mary Jackson died on April 24, 1911. The plaintiff and most of the defendants are heirs of said Mary Jackson.

The plaintiff on the 23d day of December, 1908, and for about 20 years prior to that date, resided with said Mary Jackson in her house on said premises and, at her request, took care of and supported her, and received the income of said land and paid the taxes thereon. Only about 50 acres of said land was in cultivation, and, according to the evidence of one of the defendants, said land was worth $10,000. The improvements thereon were very poor on December 23, 1908. Mary Jackson died intestate.

On the 23d day of December, 1908, said Mary Jackson made and executed to the plaintiff, for the expressed consideration of $2,000, a good and sufficient warranty deed, purporting to convey to the plaintiff and his heirs in fee the real property above described. A copy of said deed is set forth in the complaint. Said deed was subscribed and sealed by said Mary Jackson,

and two witnesses attested the same, and she acknowledged said deed before J. W. Hobart, a notary public, and he appended thereto his certificate of acknowledgment in due form under seal. Said deed was on its face, in all respects, a perfect deed of conveyance and contained no conditions.

Mary Jackson was at the time that she made said deed 85 years old, but the undisputed evidence shows that she was in the full possession of her mental powers and in good condition physically for one of her years. There is no claim that she was not competent to make a valid deed or that the execution of said deed was obtained by fraud or undue influence. Said deed was witnessed by J. W. Hobart and Mrs. F. J. Skelton. Another paper and a lease executed by Mary Jackson on the day she made said deed and referred to below were attested by the same persons. Said deed and said other papers are dated December 23, 1908. Each of them was written by J. W. Hobart, notary public, for Mary Jackson, who duly executed each of them. At the time said deed was executed said Mary Jackson executed also a letter of instructions, of which the following is a copy, to wit:

"Marquam, Oregon, Dec. 23, 1908.
"To J. M. Poorman, Cashier of The Bank of Woodburn—

"Dear Sir: You are hereby instructed to hold the inclosed deed from myself to Clarence Jackson until ninety (90) days after my death and until Clarence Jackson grantee named in said deed pays, or causes to be paid, to the persons named, the sum of money set opposite the following named persons' names, viz.:

Joseph Jackson .............................$700 00
William Jackson ........................... 300 00
George Jackson ........................... 300 00
Susan M. Harris............................ 300 00
Andrew White (heir of Malissa White)...... 300 00
Estella Jackson (heir of James M. Jackson).. 100 00

"Whereupon you are instructed to deliver the inclosed deed to the said Clarence Jackson or his lawful authorized agent.

"Dated at Marquam, Or., this 23d day of Dec., 1908.

"Witness:

"MRS. F. J. SKELTON.     MARY   her   X   JACKSON.

"J. W. HOBART.                     mark"

After said deed was so executed on said 23d day of December, 1908, Mary Jackson handed said deed to the grantee therein, the plaintiff, and also said paper set out, *supra,* and instructed him to carry said deed and said letter of instructions to J. M. Poorman, cashier of the Woodburn Bank, and deliver them to him, and the plaintiff delivered said deed and said letter to said J. M. Poorman as directed. J. M. Poorman received said letter and said deed from the plaintiff and retained said deed in his possession until the evidence in this case was taken, and then delivered it to the reporter, and it is plaintiff's Exhibit No. 1 of the evidence. After said deed was made as stated, *supra,* but about the same time, the plaintiff's wife consulted the notary, J. W. Hobart, privately concerning said deed and appeared not to be fully satisfied with it because she thought that, if the plaintiff should die before the death of Mary Jackson, she would be badly situated with reference to the land. For the purpose of satisfying the plaintiff's wife, and not as a part of the business of making the deed, and as an after-consideration, Mr. Hobart wrote a lease of said premises to the plaintiff for a term of ten years.

J. W. Hobart testified that, before writing said deed, he talked the matter over with Mary Jackson, and that she told him what she wanted to do, and that she wanted the plaintiff to have the land described in the deed and wanted him to pay the sums mentioned in the letter to J. M. Poorman. She told Mr. Hobart that she

wanted to place the land in such a condition that she would have a home during her life, and at the same time she wanted to place it in such a shape that her son Clarence, the plaintiff, could go ahead and spend money in improvements, so that he could have assurance that he would in after years reap the benefits of it himself. She said that the improvements were very poor and needed to be fixed up, and that it was nothing more than right that he should have assurance in regard to the matter. She told Mr. Hobart that she did not want to make a will, because in that case the plaintiff would have no assurance, and that the will would not be operative until it should be probated. Mr. Hobart says that he told her that there were two ways in which she might effect what she desired. One was to give the deed to him and let it be recorded and take a life lease, or she could make a deed to him and place it in the hands of some disinterested person, so that it could not be recorded, and be kept for safekeeping, and then he could go ahead with the improvements with some assurance, and after her death the deed could be recorded. She spoke of not wanting to make the matter public and gave her reason therefor. She then said that she wanted to make a provision in regard to the payment of certain sums of other children by the plaintiff and stated her reasons in detail.

Mr. Hobart prepared the deed and the letter of instructions to Mr. Poorman, at the request of Mrs. Jackson, and read them to her, and told her that he wanted her to understand distinctly that after she had signed the deed and the letter of instructions and they were delivered to Mr. Poorman she could not get them back unless Clarence should consent, and that Clarence could not get them without her consent, and she said, "That is all right; that is just the way I want it"; and she signed the papers and said, "She didn't want it

67 Or.—4

any other way; it just suited her." Mr. Hobart says that after the deed was executed she handed it to the plaintiff, and handed him also the letter of instructions. Mr. Hobart says that the lease had nothing to do with the making of the deed, and that it was a transaction of itself.

Mrs. F. J. Skelton, a witness to the deed and the other papers, was present when Mr. Hobart read them to Mary Jackson and when he told her that, if she signed them, she would never be able to get them back, and she says (that was, Mrs. Jackson said), "She didn't want them back."

There was evidence showing that the plaintiff had lived with his mother and had taken care of her for many years. There was evidence also tending to prove that, when Andrew Jackson died 39 years ago, there was some sort of agreement among the older children and their mother that the older children should pay their father's indebtedness, amounting to about $500, and that their mother would not dispose of the land but that it should be divided among the children at her death. Geo. W. Jackson and the plaintiff say that they never knew of such an agreement. If there was such an agreement, it probably had reference to the lands of which their father died seised and not to their mother's land. The heirs still have 40 acres of land that belonged to their father's estate. Said alleged contract was not in writing.

1. The counsel for the defendants claim that the deed, the letter of instructions to Mr. Poorman, and the lease for ten years should be construed together, and that they are of a testamentary character and invalid either as a will or as a deed of conveyance. They certainly would not be valid as a will, as they were not executed as a will, and Mrs. Jackson expressly stated that she did not want to make a will, and the document

that is in the form of an ordinary warranty deed has none of the elements of a will.

2. The counsel for the defendants state their defense in the following words: "When the delivery is dependent not only upon the contingency of death but upon the performance of conditions such as the payment of certain sums of money, the delivery will not relate back, and the deed conveys no title until finally delivered. The deed does not take effect to pass title at the time of the second delivery"—and they claim also that the deed was not to take effect until the sums of money mentioned in the instructions to Mr. Poorman should be paid, and that these payments were not made or tendered until after the death of the grantor, and that the deed could not take effect after her death.

*Taft* v. *Taft,* 59 Mich. 185 (26 N. W. 426, 60 Am. Rep. 291), appears to support the contentions of the defendants, but the great weight of authority is against their position. Far back in the common law the rule seems to have been settled the other way.

In Perryman's Case, 3 Coke, pt. 5, p. 85, it is said:

"As if a man delivers a writing as an escrow to be his deed *on certain conditions to be performed,* and afterward the obligor or obligee dies, *and afterward the condition is performed,* the deed is good, for there was *traditio incohata* in the lifetime of the parties."

In Sheppard's Touchstone, page 59, speaking of the delivery of a deed in escrow to be delivered to the grantee on the performance of stated conditions, the author says *inter alia:*

"He therefore (that is, trusted with the keeping and delivery of such a writing) ought not to deliver it before the conditions be performed; and when the conditions be performed he ought not to keep it, for it may be a question whether the deed be perfect before he hath delivered it over to the party, according to the

authority given: Coke, 5, 84, 3, 36. Howbeit, it seems the delivery is good, for it is said in this case (in Coke's reports) that if either of the parties to the deed die before the conditions be performed, *and the conditions be performed afterward,* the deed is good, for there was *traditio incohata* in the lifetime of the parties. * * By the performance of the conditions, it taketh its effect by the first delivery without any new or second delivery, and the second delivery is but the execution and consummation of the first delivery.''

Chancellor Kent, on page 454 of volume 4 of his Commentaries, says:

"It may be delivered to a stranger, as an *escrow,* which means a conditional delivery to the stranger, to be kept by him until certain conditions be performed, and then to be delivered over to the grantee. Until the condition be performed and the deed delivered over, the estate does not pass but remains in the grantor. *Generally* an escrow takes effect from the second delivery and is to be considered to be the deed of the party from that time; *but this general rule does not apply when justice requires a resort to fiction.* The relation back to the first delivery, so as to give the deed effect from that time, is allowed in cases of necessity to avoid injury to the operation of the deed from events happening between the first and second delivery.''

In *Wheelright* v. *Wheelright,* 2 Mass. 454 (3 Am. Dec. 66), Mr. Chief Justice PARSONS says:

"Lessor makes a lease by deed and delivers it as an escrow, to be delivered over on *condition performed,* before which lessor dies, and after it is delivered over *on condition performed;* the lease shall be the deed of the lessor from the first delivery. There is also a strong exception in 5 Coke, 85. If a man deliver a bond as an escrow, to be delivered on condition performed, before which the obligor or obligee dies, and the condition is after performed, here there could be no second delivery, * * although it was only *incohata;* but it

shall be deemed consummate by the performance of the condition.''

In *Ruggles* v. *Lamson,* 13 Johns. (N. Y.) 286 (7 Am. Dec. 375), the court says:

''It is a well-settled rule with respect to an *escrow* that if either of the parties die *before the condition is performed,* and *afterward the condition is performed,* the deed is good and will take effect from the first delivery.''

In *Dettmer* v. *Behrens,* 106 Iowa, 587 (76 N. W. 853, 68 Am. St. Rep. 326), the court says:

''We have, then, an agreement for the sale of the house and lot at a fair valuation, with the greater part of the consideration paid during life, according to the contract, and the deed to be delivered to the grantee after death of the grantor *upon the payment of the remainder of the purchase price* to the executor of the grantor's estate. In our view of the case, it is not material whether the deed be regarded as testamentary in character, * * or the deposit with the will under the control of the executor named in the nature of an escrow, as urged by appellant. In either event Behrens had the right to have the deed turned over to him upon the performance of the condition. * * The rule is well settled that the death of a grantor will not prevent the delivery of a deed if the condition under which it is held by a third person has been complied with. * * The deed when given related back to the time it was deposited with Stoevener (the scrivener) and the title became perfect in Behrens.''

In *Stewart* v. *Wills,* 137 Iowa, 17, 18 (114 S. E. 548), the facts were that Mrs. Stewart made a deed to her children of real property for a stated consideration of $2,000 and left it with a notary public to be delivered, as was supposed, after her death. In the deed she reserved a life estate in herself and stated in the deed

that, before the grantees should enter upon the possession or control of the property, they should pay certain sums of money to persons named in the deed. The grantor died before the delivery of the deeds to the grantees, and the court said: "If she left the deed with the notary to be delivered after her death to the grantees named therein, it was a sufficient delivery."

In *Stockwell* v. *Shalit*, 204 Mass. 273 (90 N. E. 571), the court says:

"It was the intention of the grantor that the scrivener, to whom he gave instructions accordingly, should take and retain possession (of the deed) until the grantor's death, when the deed was to be delivered to the grantee *upon payment by him of the expenses of preparing the instrument*. The directions having been followed and the payment made, there was an acceptance by the grantee, and the estate vested from the time of the execution of the deed."

In *Gammon* v. *Bunnell*, 22 Utah, 427 (64 Pac. 959), the court says:

"The delivery of this deed in escrow rendered it absolute when the condition upon which it was made was fulfilled. The evident intention of the parties was that if within a reasonable time after the death of the grantors the plaintiff should pay to Martha Ann Gammon Roberts $300, evidenced by her receipt, then the deed was to be delivered to the plaintiff. * * The object of the delivery in escrow was to secure the payment of the price to Mrs. Roberts. When that was paid, or offered to be paid, and refused, the plaintiff had a right to the deed. * * The intention was that it should be the deed of the grantee when the condition was complied with, *and when complied with it would take effect from its first delivery*." See, also, on this point: *Hilgar* v. *Miller*, 42 Or. 552 (72 Pac. 319); *Bostwick* v. *McEvoy*, 62 Cal. 499; *Stone* v. *Duvall*, 77 Ill. 480; 1 Delvlin, Deeds (3 ed.), 328; *Lindley* v. *Groff*, 37 Minn. 338

(34 N. W. 26); *Craddock* v. *Barnes,* 142 N. C. 89 (54 S. E. 1003).

At the time that the deed was signed, the grantor agreed that she would convey to the plaintiff the land in question, and the plaintiff agreed that, in consideration thereof, he would pay $2,000 as follows: To Joseph Jackson, $700; to William Jackson, $300; to George Jackson, $300; to Susan M. Harris, $300; to Andrew White, $300; and to Estella Jackson, $100. These sums aggregate $2,000, the amount of the consideration expressed in the deed. In the letter of instructions to J. M. Poorman, he was directed to hold the deed, placed in his custody, until 90 days after the death of the grantor and until after Clarence Jackson, the grantee, should pay, or cause to be paid, to the persons named, *supra,* the amounts above stated. This letter of instructions was agreed to by the grantor and the grantee, and they were informed by the scrivener that, if these papers were signed and placed in the custody of Mr. Poorman, the arrangement was irrevocable, excepting by the agreement of both parties. Both parties assented thereto, and the grantor said that that was the way she wanted the matter arranged. All the evidence on that point shows that the buildings on the premises were very much in need of repairs, and that the plaintiff was not willing to make the needed improvements unless he should have proper assurance that the land was to be his. The grantor told the scrivener that she did not want to make a will because it would not be operative until it should be probated. She wanted to fix the business in hand so that her son would be assured that he was to have the land and so that he would make the contemplated improvements on the premises. This was her intention, as shown by the evidence. The deed was executed by

her and by her handed to the grantee, and he took the deed and the letter of instructions and placed them in the custody of Mr. Poorman. It is claimed by counsel for the plaintiff that, when she handed the deed to her son, she did it with the intention of delivering it to him, and that it at once vested the title in him, and that the papers were deposited with Mr. Poorman merely · as security that the grantee would pay the sums of money agreed upon, but we take a somewhat different view of the matter.

3. The plaintiff, after the death of the grantor, tendered to the persons named in the instructions to Mr. Poorman the amounts that they were respectively entitled to and demanded the possession of said deed. According to the great weight of authority, as soon as the plaintiff paid or tendered the money to the persons named in the instructions, he became entitled to the delivery of the deed, and, as equity regards that as done which ought to have been done, we will consider the plaintiff's rights to be the same as they would have been if the money tendered to the persons named, *supra,* had been accepted by them and the deed had been delivered to him by Mr. Poorman. When the deed and letter of instructions were placed by the parties in the custody of Mr. J. M. Poorman, that constituted a conditional delivery of the deed, and, when the grantee complied with the conditions of that delivery by paying or tendering to said persons the sums of money specified in said instructions, he became entitled to a delivery of said deed to him, and on the second delivery of said deed he became vested with the title in fee of said real property, and said second delivery of said deed related back to the date that said deed was placed in the custody of J. M. Poorman, and the grantee became the owner in fee of said premises as of that date. The fact that said payments were made after

the death of the grantor does not vitiate said conveyance.

We hold that the plaintiff is entitled to the possession of said deed of conveyance, and that he is the owner in fee simple of the real premises described in said deed and in the complaint, and that neither of the defendants has any interest in or title to any part of said premises.

The decree of the court below is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.