Submitted on briefs December 13, 1923, affirmed February 13, 1924.

## ELIZABETH N. ANDERSON ET AL. *v.* GEORGE A. MORSE ET AL.

(222 Pac. 1083.)

**Appeal and Error—Not Necessary to Serve Notice of Appeal on Parties Who Neither Appeared nor Appealed.**

1. Since, under Section 550, Or. L., only parties that appear in the suit are entitled to notice of appeal, and appeal will not be dismissed because defendants, who did not appeal, were not served with notice when such defendants made no appearance in the suit.

**Escrows—Escrow Agreement Need not be Deposited With Escrow.**

2. Where, under a contract for the sale of land, grantors deposited certain deeds in escrow with a bank to be delivered to the grantees on their compliance with the contract, and subsequently, by agreement between the parties, the contract was changed, time for performance extended, and the bank instructed to deliver

the deeds according to the modified contract, it was not necessary that the escrow agreement be deposited with the escrow.

**Vendor and Purchaser—Modification of Land Contract Held not a Rescission of Original Agreement.**

3. Where, under a contract for the sale of land, grantees were to make certain payments, and deeds were deposited in escrow to be delivered to grantees on performance of the contract, of which time was made the essence, and the grantees entered into possession, but defaulted in performance, and subsequently entered into another agreement with grantors, whereby the terms of the sale were altered, and time for performance extended, such subsequent agreement did not rescind the original agreement, but merely modified it, and it was immaterial that the parties to the modified agreement were not identical with those of the original agreement; some of the former having died or conveyed their interests.

**Appeal and Error—Judgment—Setting Aside Default Discretionary, and will not be Reviewed, Except for Abuse.**

4. A large discretion is vested in the Circuit Courts in the matter of setting aside defaults, and their action will not be reviewed in the Supreme Court, except for abuse of discretion.

**Appeal and Error—Order Setting Aside Default Presumed Properly Made.**

5. Where the abstract of record does not disclose the steps taken to have a default set aside, and appellants have set out only the order setting aside the default, the presumption is that the order was properly made, in view of Section 799, subdivision 17, Or. L.

**Pleading—Insufficiency of Vendors' Title Held No Defense in Suit to Foreclose Land Contract.**

6. In a suit to foreclose a land contract for grantees' default, allegations in the answer attacking plaintiffs' title *held* properly stricken as constituting no defense, where subsequently to the original agreement a modified agreement, foreclosure of which was sought, recited that plaintiffs' title was sufficient, and had been approved by defendants.

**Vendor and Purchaser—Modifying Agreement for Sale of Land Held Supported by Consideration.**

7. A subsequent contract modifying a land contract, and made to settle controversies and disputes which would have developed into prolonged litigation, and to give additional time to the grantees in which to perform, *held* supported by sufficient consideration.

**Vendor and Purchaser—When Purchaser may be Given Allowance for Improvements, Stated.**

8. In cases where a purchaser in possession of land is allowed improvements on a strict foreclosure of the contract of purchase, the evidence must show that the land had increased in value by reason of improvements, or that the contract provided for an allowance therefor.

---

8. Right of defaulting purchaser under contract for sale of land to reimbursement for improvements, see note in **Ann. Cas.** 1917C, 85.

**Vendor and Purchaser—Time for Redemption in Strict Foreclosure of Land Contract Largely Within the Discretion of Court.**

9.   The time allowed for redemption in strict foreclosure of land contracts must be determined from the facts in each case, and is largely a matter of discretion.

**Vendor and Purchaser—That Decree Foreclosing Land Contract was Entered Before Time for Final Payment No Defense Where Contract Repudiated.**

10.   Where the purchasers under a land contract had been in possession for ten years, enjoying the use of the property, but defaulted in performance, whereupon in 1917 a modified agreement was entered into extending the time for performance, a decree in strict foreclosure entered into in 1919 was not invalid, because the time for final payment had not yet arrived under the terms of the modified agreement which had been repudiated by defendants.

**Vendor and Purchaser—Equity will not Relieve of Forfeiture Where Time Made Essence of Contract.**

11.   Where a modified agreement for the sale of land provided for forfeiture of payments made thereunder in case of nonperformance by the purchasers, equity could not relieve the purchasers of the forfeiture, where they had defaulted, and time of performance was made of the essence of the contract.

**Vendor and Purchaser—Failure to Require Delivery of Warranty Deed on Redemption After Strict Foreclosure of Land Contract Held not Error.**

12.   On strict foreclosure of a contract for the sale of land for default of purchasers, a decree directing a deed to be executed and delivered in case of redemption, *held* not erroneous because it did not require a warranty deed to be delivered, where, under the circumstances, it would have been unjust to require a deed with covenants of general warranty to be executed, and the provisions of the deeds, being under Section 9895, Or. L., being ample to vest title to the lands in redemptioners.

**Appeal and Error—Destruction of Escrow Could not be Complained of by Defaulting Purchaser Under Land Contract.**

13.   Where deeds were delivered in escrow under a contract for the sale of land to be given to the purchaser on compliance therewith, and the purchasers made default, but subsequently agreed with vendors to a modification of the contract, but again defaulted, whereupon the vendors withdrew the escrow deeds, after which one of the original grantors died so that his deed could not thereafter be delivered, *held*, in a suit for strict foreclosure, that the destruction of the escrow was the fault of defendants, because of failure of performance, and they could not be heard to complain thereof.

**Vendor and Purchaser—Requiring Defaulting Purchasers to Pay Interest on Amount Due Held not Error in Foreclosure of Land Contract.**

14.   On strict foreclosure of a contract for the sale of land, it was not error to require purchasers to pay interest on the amount

found due while at the same time vendors were awarded posses-
sion of the land, and it appearing that the time for redemption
had expired, and that the purchasers were not injured by the
requirement to pay interest.

From Jackson:   F. M. CALKINS, Judge.

In Banc.

This appeal is from a decree foreclosing a contract
for the sale of land, and allowing defendants, Morse,
six months in which to redeem.  On August 31, 1909,
Eli K. Anderson and Elizabeth N. Anderson, his wife,
agreed to sell to George A. Morse and Ora A. Morse,
husband and wife, 305 acres of land in Jackson County
for the aggregate sum of $106,750.  Land in the City
of Ashland was accepted by the vendors as the initial
payment at a valuation of $30,000.  Thereupon a
warranty deed was duly executed by the vendors and
placed in a bank, in escrow, with a letter of instruc-
tions signed by the grantors and assented to in writ-
ing indorsed thereon by the grantees.

The quitclaim deed, conveying certain water rights
appurtenant to said land, was also duly executed by
the vendors and deposited in escrow at the same time
and place subject to instructions contained in another
letter signed by the grantor, Eli K. Anderson, and
also assented to in writing indorsed thereon and
signed by the grantees.

On September 1, 1909, an additional letter of in-
struction signed by the grantor, Eli K. Anderson, and
assented to in writing by the grantee, G. A. Morse,
was delivered to said bank.  No issue is presented
requiring a construction of the escrow agreements
formed by these letters.  It is sufficient to say that
by them time is made the essence of the contract.

The grantees, Morse, entered into the possession of
the land described in said escrow deeds and had the

use and enjoyment of the property therein described until after the decree was entered in this suit in the Circuit Court, a period of more than ten years.

On January 8, 1912, the grantees assigned to the grantors a mortgage for $10,500, which was accepted as a payment by grantors on the purchase price. That mortgage had not been paid at the time the decree was entered in the Circuit Court. On or about March 15, 1912, the grantor, Eli K. Anderson, died testate. His will was duly probated and his estate settled. By the terms of his will his personal property was bequeathed to his widow, the grantor, Elizabeth N. Anderson, and his real property was devised to his children, all of whom are parties plaintiff in this suit. Some time thereafter, or thereabouts, the grantees sold to the defendant, Stump, two acres of the land described in the escrow deed. At the request of the grantees the grantor, Elizabeth N. Anderson, executed and delivered a deed conveying to said Stump the two acres for the sum of $700. For this conveyance the grantees executed their note, dated July 27, 1912, which note has never been paid. The grantees also paid in cash on account of interest the following amounts: January 3, 1911, $5,267.90; January 7, 1911, $1,000; January 8, 1912, $3,105; January 16, 1913, $2,500; January 22, 1913, $1,373; February 28, $1,000; April 28, 1914, $2,975; January 12, 1915, $750; and December 23, 1915, $1,100, making an aggregate sum of $19,070.90 paid in cash by the grantees prior to the execution of the agreement dated October 9, 1917. The grantees also claim a credit of $1,560 for interest on said mortgage assigned by them to the grantors. The grantees having become substantially in arrears the successors in interest of the grantors were pressing them for payment. Contro-

versies arose. The grantees claimed damages for alleged breaches of the escrow agreements, and failure on the part of the grantors and their successors in interest to perform fully the terms of the escrow agreements. Negotiations for an adjustment were pending for about ten months. These negotiations terminated in the agreement which is the basis of this suit. This agreement is dated October 9, 1917, but was actually made some time in September of that year. Owing to the necessity of sending it to Seattle, Washington, twice for execution and not being dated until all the parties had signed it, it bears the later date. Among other things, this agreement contains the following recitals and engagements:

"And, whereas, as a part of said transaction said Eli K. Anderson furnished the grantees named in said deed an abstract of title to the real property above described and which abstract the second parties hereto have duly approved and accepted after having had the title shown therein passed upon by their attorney at law,

"And, whereas, the second parties hereto have, as a part of said transaction and since the deposit of said deeds, determined and agreed that the record title to said premises is satisfactory to them and that said deeds if delivered to them will deliver all of the title contemplated by the parties to said transaction of the parties hereto,

"And, whereas, the title as shown by said abstract is acceptable to said second parties,

"And, whereas, under said conditions of escrow the second parties hereto made certain payments upon the purchase price of said premises, leaving unpaid on account of said escrow the principal sum hereinafter recited,

"And, whereas, since the deposit of said deeds in escrow the second parties have maintained that they have made certain tenders and demands for the execu-

tion of deeds to certain portions or to all of said premises, which they claim were not complied with,

"And, whereas, they have maintained that there has been some default by the estate of said Eli K. Anderson, deceased, or by the above-named parties as his devisees under the last will and testament and that the second parties have in some manner been damaged to some extent by a failure upon the part of said estate or the first parties, to comply with the terms and conditions of said escrow agreement and said supplemental agreement,

"And, whereas, the parties hereto are desirous of substituting this agreement for the said escrow agreement above referred to and for all other agreements affecting said premises and of satisfying all of said claims asserted or held by the second parties,

"Now, therefore, in consideration of the matters above recited and of the conditions hereinafter expressed, it is mutually agreed by and between the parties hereto that this agreement be and hereby is substituted for the agreements depositing said deeds in escrow and which agreements were dated August 31, 1909, and is substituted for said supplemental agreement of September 1, 1909, and all of said prior agreements; and each and every agreement heretofore made by said Eli K. Anderson or any of the parties of the first part hereto with the parties of the second part, or either, concerning the delivery of said deeds, is hereby cancelled.

"It is Mutually Agreed By and Between the Parties Hereto that the unpaid portion of the purchase price for said premises and the price under this contract is $56,375.00 and interest at the rate of 6 per cent per annum from January 10, 1917, less the sum of $3,000.00 which is now paid by the second parties to the first parties on account of the purchase price of said premises. That the said bank is hereby directed to hold said deeds subject to these conditions.

"That if on or before October 1, 1917, the second parties shall pay to said bank, subject to the order of all of the first parties hereto, except the said

Elizabeth N. Anderson, the further sum of $2,000.00, and shall on or before January 10, 1918, pay into said bank and to the order of the same persons, interest at the rate of 6 per cent per annum from January 10, 1917, upon all deferred and unpaid portions of said purchase price; and shall on or before January 10, 1919, pay into said bank, subject to the order of the same persons, a further sum equal to the interest at the rate of 6 per cent upon the deferred and unpaid portions of said purchase price; and shall on or before January 10, 1920, so pay into said bank to the order of the same persons, the whole of the unpaid portion of said purchase price with interest at the rate of 6 per cent per annum upon all unpaid portions thereof, so that the whole amount so paid in shall aggregate the amount of said purchase price plus interest upon deferred payments at the rate of 6 per cent per annum; and shall hereafter seasonably pay all taxes and public charges which shall be levied or assessed against any of said property, except the above-mentioned two acres heretofore deeded to the second parties, and excepting the taxes on Lots 1 and 2 of the Royal Orchard Tract hereinafter mentioned, and shall make such tax payments prior to their delinquency and shall also, prior to October 1, 1917, pay all unpaid taxes against said Lots 1 and 2 of said Royal Orchard Tract, time being the essence of each and all of the payments herein provided for, including principal, interest and taxes and other public charges above mentioned—then said bank shall deliver said deeds and each thereof to the second parties or to whom they may direct; but if default shall be made in any one of said payments and said default shall continue for a period of sixty (60) days, time being the essence thereof, then said bank shall deliver each of said deeds to the first parties hereto, or to any person designated in writing by a majority of said first parties, and all payments which shall have been made by the second parties on account of any of the transactions or matters mentioned in this contract shall be forfeited

to and belong to the parties by whom they shall have been received, and shall be in lieu of and as agreed compensation for the rental value and occupation of said premises. * *

"And for said considerations the second parties do further undertake and agree that they accept the title to said premises as the same stood on August 31, 1909, and they do hereby satisfy, waive and discharge any claims which they or either of them have or claim to have, whether for damages or otherwise, against either the estate of said Eli K. Anderson, deceased, or against any of the parties of the first part hereto, and which arose out of any acts or omissions of either the said Eli K. Anderson or of his estate or of any of the first parties in connection with the carrying out of the terms and agreements under which said deeds were heretofore deposited and retained in escrow in said bank. That there are no offsets or counterclaims against the purchase price of the said premises as above recited."

This agreement was signed by all of the parties plaintiff, who were all of the successors in interest of Eli K. Anderson, deceased, and also by the defendants, Morse. The agreement was also duly sealed and acknowledged by all the parties.

At the solicitation of the grantees, the successors in interest of the grantors accepted a conveyance from the grantees for 57 acres of the land described in the escrow deed for which the grantees were allowed the sum of $350 per acre, or a total sum of $19,950. For this conveyance the grantees claim credit for $10,000 on account of the principal, and $9,950 on account of interest owing the grantors. These amounts were taken into consideration in computing the amount due as agreed upon in the contract dated October 9, 1917.

At the time of the execution of the contract of October, 1917, the grantees paid the sum of $3,000, on October 31, 1917, $750, and on December 31, 1917, the further sum of $250. The grantees having failed to pay the other $1,000 as specified in the contract of October, 1917, having failed to pay the interest as therein agreed in January, 1918, and having failed to pay the taxes as therein specified, became in default under the terms of the 1917 agreement. The plaintiffs, after waiting the full sixty days, on April 16, 1918, notified the grantees that unless on or before May 1, 1918, they complied with the 1917 contract by paying the taxes as required in said contract and made the payments that were overdue to the successors of the grantors, that they, plaintiffs, would without any further notice or demand declare all payments theretofore made under the 1917 contract forfeited; that the First National Bank of Ashland, where the escrow deeds were deposited, would be required to surrender to the attorney for the plaintiffs all papers so deposited in escrow; immediate possession of the premises described in said escrow deeds and then occupied by the grantees would belong to the plaintiffs, and they would take possession of said premises. None of the payments having been paid, the plaintiffs commenced this suit on June 3, 1918. The complaint sets out in detail the transactions, and makes the agreement of October 9, 1917, a part thereof by attaching it to the complaint as Exhibit ''A.'' The defendants, George A. Morse and Ora A. Morse, demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of suit. The demurrer was overruled. The defendants, Morse,

by their amended answer admitted the relation of the grantors, the execution and deposit of the deeds as escrows, the death of Eli K. Anderson, one of the grantors, the probate of his will and the execution of the contract dated October 9, 1917. They also admitted the execution of the deed conveying the two acres to Stump and other matters not pertinent to the issues submitted on appeal. The defendants, Morse, then set up an affirmative defense alleging that they purchased the land described in the escrow deed on August 31, 1909; set out the payments claimed by them aggregating $55,200 on the principal, $30,580.90 interest, and $24,245 for permanent improvements, making a total of $110,025.90 as the interest of the defendants, Morse, in the property described in the escrow deeds.

The defendants further set up in their affirmative answer certain alleged defenses under the original escrow agreement and attack the agreement of October 9, 1917, on the ground of fraud and want of equity. The answer is long and such parts as are deemed helpful to understand the reasons for our conclusion will be referred to in the opinion. The reply denies the affirmative allegations of the answer. None of the defendants, excepting the defendants, Morse, appeared.

Fourteen errors are assigned by appellants. These may be summarized as follows: (1) In overruling the demurrer to the complaint; (2) in vacating an order of default against the plaintiffs; (3) in striking out portions of appellant's answer; (4) in not holding the contract of October 9, 1917, void; (5) in not allowing the appellants credit for the amount invested in permanent improvements, and

(6) in allowing only six months in which to redeem. This substantially includes all the errors assigned and relied upon by the appellants. The defendants, Morse, appealed.                    Affirmed.

For appellants there was a brief over the names of *Mr. George A. Morse* and *Mr. Ora A. Morse.*

For respondents there was a brief over the name of *Mr. A. E. Reames.*

COSHOW, J.—1. The respondents, who were the plaintiffs in the Circuit Court, have suggested that this appeal should be dismissed because the defendants who do not appeal were not served with notice of appeal. None of those defendants appeared in this suit. Only the parties appearing are entitled to be served with notice of appeal: Section 550, Or. L.

The demurrer to the complaint is predicated on the theory that the contract upon which it is based is void in these particulars: (a) That Eli K. Anderson, one of the vendors, was dead and the other vendor, Elizabeth N. Anderson, had conveyed her interest in the land; (b) that the contract provides that the only conveyances the vendors were to receive were the deeds said vendors executed in 1909 and then in escrow in the bank; (c) that Eli K. Anderson, one of the vendors, was not a party to the contract which is the basis of this suit; (d) that the contract was never deposited in said bank; and (e) that the parties to the deed are not the same as the parties to the contract.

2, 3. None of the reasons assigned by appellants for sustaining their demurrer to the complaint are

sound. The complaint stated a good cause of suit
under all the authorities cited by appellants. It
alleges the option to sell, its acceptance by the ap-
pellants, and the deposit of the deeds with the ap-
proval of the appellants. The deeds, by the agree-
ment made at the time of the deposit, were to be
delivered in ten years from that date; provided, pay-
ment was made according to that agreement. The
fact that the 1917 contract is based on a prior con-
tract does not eliminate the allegations in the com-
plaint regarding the original contract and deposit
of the deeds in accordance therewith. The children
of Eli K. Anderson, the original vendor, succeeded
to his interest in the land as devisees. They were
as to all legal intent and purposes, as far as this
suit is concerned, the original grantors. The deed
from the other vendor, Elizabeth N. Anderson, to
the devisees in no way changed the escrows. That
deed was made subject to the escrows, was accepted
by the devisees in full knowledge thereof, and sub-
ject thereto. The contract dated October 9, 1917, did
not change the escrows. The deeds were the es-
crows. The contracts, whether made at the time of
or after the deposit, defines the terms for holding
and delivering the escrows. Those contracts are not
the escrows. The death of the original grantor is
alleged. It thus appears from the complaint that a
delivery of the escrows at any time after the date
of the 1917 contract would have conveyed title to
the grantees Morse as of August 31, 1909, the date
of the original deposit: *Foulkes* v. *Sengstacken,* 83
Or. 118, 127 (158 Pac. 952, 163 Pac. 311); *Jackson* v.
*Jackson,* 67 Or. 44 (135 Pac. 201, Ann. Cas. 1915C,
373); Devlin on Real Estate, Deeds, § 33a. The
1917 contract, which is a part of the complaint, con-

firms those deeds and the devisees of the grantor, Eli K. Anderson, affirm and confirm the acts of their testator in depositing the deeds and in a writing, duly sealed and acknowledged, consent that the escrows may be delivered to the grantees conveying the title as of August 31, 1909. The complaint further alleges, and this allegation is supported by the contract made a part of the complaint, that the appellants accepted those deeds as sufficient title to the premises therein described.

The contention that the plaintiffs, who are respondents here, either rescinded or seek to rescind the original contract of sale is not tenable.

"It [the escrow agreement], may, however, be subsequently varied by the agreement of the parties." 21 C. J. [§ 9].

*Christian* v. *Deadwood First Nat. Bank,* 155 Fed. 705 (84 C. C. A. 53); *Raymond* v. *Smith,* 5 Conn. 555; *Beamer* v. *Morrison,* 210 Ill. 443 (71 N. E. 402). Indeed, it is not always necessary that the agreement be in writing. Although some of the authorities hold that the condition upon which the instrument is deposited in escrow must be expressed in writing, the weight of authorities is to the effect that it need not be. Whether or not the escrow agreement should be in writing depends upon the nature of that agreement and its conditions: 21 C. J. 868, and authorities cited in notes 49 and 50; *Foulkes* v. *Sengstacken,* 83 Or. 118 (158 Pac. 952, 163 Pac. 311); *Jackson* v. *Jackson,* 67 Or. 44 (135 Pac. 201, Ann. Cas. 1915C, 373); 2 Tiffany, Real Property (2 ed.), § 462. It necessarily follows, therefore, that the escrow agreement need not be deposited with the escrow.

Instead of the original agreement having been rescinded, it was modified by a subsequent agreement voluntarily made by all of the parties having interest in the land under contract of sale. The 1917 agreement was substituted for the 1909 agreement, but the escrows were to be deliverd as originally prepared. If the escrows had been delivered as contemplated by the parties to the 1917 agreement the grantees would have acquired title to the land as contemplated in the 1909 agreement. There is nothing on the face of the contract of 1917 that indicates illegality; it was not subject to attack by demurrer. The demurrer was properly overruled.

4, 5. A large discretion is vested in the Circuit Courts in the matter of setting aside defaults. The action of the Circuit Courts in that matter will not be reviewed in this court except for abuse of discretion: *Wallace* v. *Portland Ry., L. & P. Co.,* 88 Or. 219 (159 Pac. 974, 170 Pac. 283). The abstract of record does not disclose the steps taken to have the default set aside. The appellants have set out only the order setting aside the default. The presumption is that the order was properly made: Section 799, subd. 17, Or. L.; *First Nat. Bank* v. *Linn County Bank,* 30 Or. 296, 300 (47 Pac. 614).

Of the matter stricken from the answer on motion of plaintiffs paragraphs 6, 9, 10 and 13 were based on the escrow agreement of 1909. Defendants, Morse, admit the execution of the agreement of 1917. The latter agreement contains this clause:

" * * It is mutually agreed by and between the parties hereto that this agreement be and hereby is substituted for the agreements depositing said deeds in escrow and which agreements were dated August 31, 1909, and is substituted for said supplemental

agreement of September 1, 1909, and all of said prior agreements; * * "

Said paragraphs did not constitute any defense to the cause of suit and were properly stricken out.

6. Paragraphs 22, 23, 24 and 25 constituted no defense to the complaint in this suit. These paragraphs allege that the defendants, Morse, never had an attorney to examine the abstract of title to said premises but relied upon the attorney for the plaintiffs; that the tender of the escrow deeds was not a tender of a sufficient title; that the quitclaim deed of the grantor, Elizabeth N. Anderson, attempting to convey the two acres referred to above, is wholly insufficient to convey a marketable title, and that the said escrow deeds, if delivered to the defendants, Morse, are wholly insufficient to convey a marketable title or any title. It will thus be seen that most of the allegations are mere conclusions. The answer admits the execution of the 1917 agreement. That agreement recites that the answering defendants had been "furnished an abstract of title to the real property above described and which abstract the second parties hereto [the appellants] have duly approved and accepted after having had the title shown therein passed upon by their attorney at law." The defendants, Morse, in said paragraph 22 in effect stated that the abstract of title was not certified to a date later than May 1, 1914, more than four years after the execution of the escrow agreement. No valid reason is alleged for not thoroughly informing themselves about the title prior to the execution of the 1917 agreement. Nothing appears in the last-mentioned paragraphs of the amended answer imputing fraud to any of the plaintiffs. The allegations in those paragraphs do not constitute any

issue of fact triable in this suit. They were properly stricken out. No issuable matter is presented in paragraph 27 of the amended answer and it was properly stricken out.

7. The reasons assigned for sustaining the complaint on the attack by the demurrer apply with equal force against appellants' contention that the contract dated October 9, 1917, is illegal and void. The evidence also sustains the contract. It was entered into between parties capable of contracting. It was voluntarily made for a sufficient consideration. The parties plaintiffs were represented in negotiating the contract by able counsel and also participated personally in the negotiations. The defendants, Morse, were represented by the defendant George A. Morse. Ten months were consumed in consummating the contract. There is no evidence of deceit or fraud. The contract was a settlement of controversies and disputes, which easily could and probably would have developed into prolonged litigation. Additional time was given to the defendants, Morse, in which to make payment of the amount owing under the original escrow agreements. These were sufficient considerations for the contract. The defendant, George A. Morse, voluntarily acted in his own behalf and in behalf of his wife. No improper influence was exercised over him to induce him not to employ an attorney. He had ample time to consider very thoroughly the matter. His own evidence discloses that he was accustomed to buying and selling real property. He testified that he had been interested in different transactions involving real property in Jackson County to the extent of $500,000. The allegations of fraud connected with framing the 1917 contract are

not supported by any testimony. The agreement is valid and binding upon all the parties thereto.

The improvements for which appellants claim credit were all made long prior to the date of the 1917 agreement. The appellants enjoyed the use of the premises, including all alleged improvements, for over two years thereafter. At the time this suit was commenced the premises were occupied by appellants. The improvements thereon were being allowed to fall in disrepair. There is no evidence to prove the value of the alleged improvements made by the appellants. The appellant, George A. Morse, testified as to the amount he expended in making the alleged improvements, but there is no testimony which tends to prove that the premises were more valuable at the time of the commencement of this suit by reason of said alleged improvements.

8. In cases where a vendee in possession of the land is allowed improvements upon a strict foreclosure, the evidence must show that the land has increased in value by reason of the alleged improvements, or that the contract provided for an allowance for improvements.

"In the absence of some provision in the contract fixing a definite measure of compensation, the amount recoverable for improvements is not what it cost to put them on the property, but the enhanced value of the property, not exceeding the amount expended for the improvements, and from this is to be deducted an amount equivalent to the fair rental value of the premises." 39 Cyc. 1402; *Hawkins* v. *Rodgers,* 91 Or. 483, 500 (179 Pac. 563, 905).

"When the vendor has neither waived his legal rights nor committed any default, he cannot be involuntarily taxed with improvements made upon his property without his consent, or be made to pay a

price for recovering it back.''   *Moore* v. *Giesecke,* 76
Tex. 543, 551 (13 S. W. 290, 293).

''Declaring a forfeiture for breach of the condi-
tions of a contract is not rescission of the contract.
It puts an end to the contract and extinguishes it
in pursuance to its terms just as performance ex-
tinguishes it.''   13 C. J. 608, cited in *Kemmerer* v.
*Title & Trust Co.,* 90 Or. 137, 143 (175 Pac. 865);
*Stennick* v. *J. K. Lumber Co.,* 85 Or. 444, 478 (161
Pac. 97, 166 Pac. 951).

9, 10. The time allowed for redemption in strict
foreclosures must be determined from the facts in
each case.   It is largely a matter of discretion of
the court.   The appellants claim that when the de-
cree was entered in the Circuit Court in this suit
the time for the final payment had not arrived.   This
claim is predicated upon the 1917 agreement.   The
decree was entered on December 6, 1919, more than
ten years after the original escrow agreement was
entered into.   The 1917 agreement extended the time
for completing the payments to January 10, 1920.
The appellants cannot claim the benefits of the 1917
agreement and at the same time repudiate that agree-
ment.

''Doth a fountain send forth at the same place
sweet water and bitter?''   James iii:11.

The appellants have not sought to do equity in
this suit.   They have not come into court offering
to place the respondents in the same condition in
which they would have been had the escrow never
been made.   They come seeking to have their own
contract, deliberately and voluntarily made, declared
void.   They allege fraud in the making of that con-
tract, but no evidence is introduced to support that
allegation.   They urge strict technicalities to defeat
plaintiffs, and ask for the most liberal equities in

their own behalf: *Vance* v. *Blakely,* 62 Or. 326, 331 (123 Pac. 390).

11. By the terms of that contract all payments heretofore made were forfeited in case the terms of the contract were not fully performed by them. Equity cannot, under the circumstances, relieve them of that forfeiture.

"It is well settled that where the parties have so stipulated as to make the time of payment of the essence of the contract, within the view of equity as well as of the law, a court of equity cannot relieve a vendee who has made default." 1 Pomeroy's Equity Jurisprudence, § 455.

*Sheehan* v. *McKinstry et al.,* 105 Or. 473, 484 (210 Pac. 167); *Maffet* v. *Oregon & California R. Co.,* 46 Or. 443, 454, 455 (80 Pac. 489); *Security Savings Co.* v. *Mackenzie,* 33 Or. 209 (52 Pac. 1046); *Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1, 10, 12 (55 Pac. 713, 69 Am. St. Rep. 17, 43 L. R. A. 199).

12. The appellants complain of the decree in this, that it directs a deed to be executed and delivered by the plaintiffs in case the appellants redeem as provided in the decree. The appellants contend that they would be entitled to a warranty deed. The plaintiffs did, before instituting this suit, tender the defendant, Morse, the two escrow deeds. The plaintiffs fully complied with their contract and did all required of them to entitle them to the relief prayed for. The decree prescribes that in case the defendants, Morse, redeem

"the plaintiff shall make, execute and deliver to the redemptioner a good and sufficient deed to the premises so redeemed, including the water rights as redeemed, and upon the failure of the plaintiffs to make such conveyance this decree should stand in lieu thereof."

The decree also provides that in case the defendants, Morse, pay the amount required to make redemption,

"then upon such payment the defendants, Morse, or their successors in interest, shall without any further decree herein be the owners of all the lands above described."

These provisions in the decree, under Section 9895, Or. L., are ample to have vested title to the lands in the defendants, Morse. The appellants were not entitled to more. They had been in possession of the premises more than ten years at the time the decree was entered. They had during that time exercised ownership over the property, by selling some of it, contracted for the sale of other parts of it; and had subdivided it into tracts, laid out roads through it, platted it, recorded the plat and attempted to dedicate the roads to the public. It would have been unjust under those circumstances to have required the plaintiffs to have executed a deed with covenants of general warranty.

The defendants, Morse, never complained of the insufficiency of the escrow deeds until after this suit had been commenced. They knew that the original grantor was dead at the time they entered into the 1917 contract. They leased the premises for a period of three years to a stranger after this suit was instituted. It was too late to object to the title conveyed by the escrow deeds after this suit had been instituted: *Sheehan* v. *McKinstry et al.,* 105 Or. 473 (210 Pac. 167).

13. The defendants, Morse, by their default, prevented the delivery of the escrow deeds. If the defendants Morse had performed, according to the 1917 agreement, the conditions would have been

satisfied and the title would have passed: 2 Tiffany, Real Property (2 ed.), p. 1778, § 462. The plaintiffs lawfully withdrew the escrow deeds and they thereupon ceased to be escrows. The original grantor having died long prior to the commencement of this suit, his deed could not thereafter be delivered. The destruction of the escrow was therefore the fault of the defendants, Morse, and they cannot be heard to complain thereof.

14. The appellants, Morse, assign as error the provision in the decree requiring them to pay interest on the amount found due while at the same time plaintiffs were by said decree awarded possession of the land. Under the conditions of this suit this was not error requiring a modification of the decree, it error at all. The time for redemption expired long before appellants filed their brief in this court. The undertaking on this appeal does not stay execution. Appellants are not injured by that provision in the decree appealed from.

The appellants assign error because they claim that no proof was offered to sustain the allegation in the complaint that the Andersons were the owners of the land involved in this suit on August 31, 1909. By their amended answer appellants admit the title in Andersons at that time, and further admit that after an examination of the abstract of title furnished them by the Andersons at that time, they, appellants, were satisfied with the title. That admission is clearly established by the excerpt from the 1917 agreement set out above.

The plaintiffs acted promptly after the defendants, Morse, defaulted. "Equity aids the vigilant." The decree of the Circuit Court is affirmed.

The Circuit Court retained jurisdiction of this suit for the purpose of adjudicating the rights of some of the defendants who were not served and for the further purpose of appropriately adjudicating the issues regarding platting and subdividing the land under the contract. The suit will, therefore, be remanded to the Circuit Court for such further proceedings as indicated.                           · AFFIRMED.