In re the Consolidated ESTATES OF Donald Edward PELC and Mary Ellen Pelc, Both FDBA Don Pelc Trucking, Debtors.

Robert J. BURCH, Plaintiff,

v.

BONDED ADJUSTERS, INC., an Oregon corporation; Bay Orthopaedic & Fracture Clinic, P.C., an Oregon corporation; Dr. K. Vahoomani; Pacific Power & Light Company; Flaxel, Todd & Nylander, Attorneys at Law; Warner Cable of Coos County; Stampers J & J Tire Company, an Oregon corporation; Spady and Carleton, Attorneys at Law, Defendants.

and

STAMPERS J & J TIRE COMPANY; Spady and Carleton; Hannum Datsun; Western Mercantile; Pioneer National Title Insurance Company, Third Party Plaintiffs,

v.

Donald Edward PELC and Mary Ellen Pelc, Third Party Defendants.

Bankruptcy No. 681–05684.
Adv. No. 681–6400.

United States Bankruptcy Court,
D. Oregon.

June 1, 1983.

Myron D. Spady, Bandon, Or., for Stampers J and J Tire Co. and Spady and Carleton.

Benton Flaxel, North Bend, Or., for Flaxel, Todd & Nylander.

Blair J. Henningsgaard, Astoria, Or., for debtors.

## MEMORANDUM OPINION

C.E. LUCKEY, Bankruptcy Judge.

The trustee, Robert Burch, seeks to recover payments made to defendants as alleged voidable preferential transfers under 11 U.S.C. Section 547. Defendants Bonded Adjusters, Inc., Bay Orthopaedic Clinic, Dr. Vahoomani, Pacific Power and Light, and Warner Cable have entered into stipulated settlements with the trustee and these proceedings are now unresolved only as to alleged voidable preferential transfers to defendants Flaxel, Todd and Nylander, Attorneys at Law, Stampers J and J Tire Company (Stampers), and Spady and Carleton, Attorneys at Law. Defendants Stampers and Spady and Carleton filed a third party complaint against the debtors, Donald and Mary Pelc. The debtors have claimed certain funds as exempt and have joined Hannum Datsun, Western Mercantile, and Pioneer National Title Insurance Company (P.N.T.I.) as third party plaintiffs under Rule 14 of the Federal Rules of Civil Procedure. Trial of the matter was held November 18, 1982.

The alleged preferential payments arose out of transactions relating to the sale of the debtors' home in Coos County, Oregon in June of 1980 to Philip and Margaret Dahl. The title report at the time of the sale revealed 20 judgments against the Pelcs. Fourteen of the judgments were paid out of proceeds of the Dahls' down payment for the property in June, 1980. The balance of the sale price was to be paid in installments due in June of 1981 and June of 1982. P.N.T.I. was the closing escrow agent for the sale and designated as collection escrow agent. A promissory note from the Dahls and a mortgage in favor of the Pelcs securing it were delivered into escrow as was a satisfaction of mortgage executed by the Pelcs. On June 17, 1981 P.N.T.I. disbursed the annual installment payment to Wood Products Credit Union, Bonded Adjusters, Inc., Security Bank of Coos County, Western Mercantile, and Stampers pursuant to escrow instructions executed in June of 1980. The parties which remain as defendants in this proceedings are Spady and Carleton, attorneys, and Stampers who have identical interests and who received $2,426.56 on June 24, 1981 from P.N.T.I. which payment is alleged to be preferential and Flaxel, Todd and Nylander, attorneys, who received $315.44 on June 21, 1981 from P.N.T.I. which payment is alleged to be preferential.

On June 19, 1981, two days after the above-mentioned disbursements by P.N.T.I., Donald and Mary Pelc filed their joint, voluntary Chapter 7 bankruptcy petition. An order of discharge was entered on December 17, 1981 in their bankruptcy. In their Schedule B–4 attached to their petition, the Pelcs claimed the balance due from the sale of the property consisting of the June, 1982 installment specifying 11 U.S.C. Section 522(d)(5) as the statute giving rise to the exemption. The federal exemption scheme was still available to Oregon residents at the time the Pelcs filed their bankruptcy petition. The monies claimed as exempt were received by P.N.T.I. on June 22, 1982 and total $14,528.78. P.N.T.I. holds these funds subject only to P.N.T.I.'s cost of disbursement. No affirmative relief is sought by or against P.N.T.I. and P.N.T.I.'s sole obligation is to disburse the funds pursuant

to the order of this Court. Stampers, Western Mercantile and Hannum Datsun were to receive payment from the June, 1982 installment pursuant to the escrow instructions and were scheduled as creditors in the Pelcs' bankruptcy.

Plaintiff-trustee Burch and third party defendants-debtors contend that the direction in the 1980 escrow instructions for disbursement of funds in installments in 1981 and 1982 was not an assignment of those funds or an assignment of the right to receive those funds but rather only a direction to a third party instructing it to pay certain creditors from a particular fund and as such was a revocable instruction. The trustee and the Pelcs deny that a transfer was made in 1980 when the escrow instructions were executed except to the extent of the down payment and contend that a transfer occurred in 1980 and 1981 only when and to the extent that creditors were actually paid. This would make the June, 1981 disbursement preferential and would subject all of the June, 1982 payment to Pelcs' claim of exemption.

Defendants Flaxel, Todd and Nylander, attorneys, and Stampers, and Spady and Carleton, attorneys, contend with respect to the June, 1981 installment that the collection escrow instructions of June, 1980 to P.N.T.I. and supporting letters and documents constitute a transfer as of June, 1980 of a part of the Pelcs' interest to the respective defendants under one or both of the following legal theories:

1. An assignment coupled with an interest and/or

2. Third party beneficiary contract.

Defendants Stampers and Spady and Carleton, attorneys, also contend that their knowledge and reliance on the execution of the escrow instructions further strengthens their position.

Third party plaintiffs Stampers, Spady and Carleton, attorneys, Western Mercantile, and Hannum Datsun assert a claim to the funds which were to have been disbursed by P.N.T.I. in June, 1982 under the terms of the escrow instructions contending that their interests in the funds were the result of a transfer which occurred in June, 1980 and not subject to a claim of exemption by the Pelcs under the same legal theories relied upon by defendants herein. Third party plaintiffs seek an order directing P.N.T.I. to disburse the funds it holds pursuant to the escrow instructions. Third party plaintiff P.N.T.I. takes no position with respect to the claims of the remaining parties.

The parties frame the issues for the Court's determination as whether transfers from the debtors to defendants and third party plaintiffs were effectuated by the transactions involved in the sale of the debtors' real property and creation of an escrow in June, 1980 and, if transfers were made, their validity, nature and extent.

The exhibits attached to the pre-trial order in this case establish the agreement for sale between the Pelcs and Dahls and the intent of the parties with regard to the judgments outstanding against the Pelcs at the time of the sale. They include the following:

1. The earnest money receipt and the amendment attached thereto provided "the necessary money to clear liens against property to be taken out of funds at closing, refer to preliminary title report dated May 30, 1980." (2nd page of pre-trial order Exhibit "1") Examination of the title report clearly shows that the down payment deposit funds at closing were insufficient to satisfy the judgments.

2. Letter from Attorney Rossi, representing Dahl, to Attorney Hogan, representing Pelc, dated June 19, 1980 sets the following "conditions" to completing the sale:

    b) "Preparation of irrevocable collection escrow instructions guaranteeing that Dahl payments will be used to pay off the Judgment."

    c) "The willingness of Pioneer Title to issue purchaser's policy to Dahls without encumbrances of Pelc judgments."

The letter further states that "Janet Johns has a form of collection escrow in-

structions that she wishes to use". The letter shows a copy to Janet Johns, P.N.T.I.

3. The letter from Attorney Hogan to P.N.T.I. dated June 20 (Exhibit 4) is clearly in compliance with the above "conditions" of sale. It directs payment of the Pelc judgments from the proceeds of sale. The letter was signed by both Pelcs.

4. Subsequently P.N.T.I. closed the sale and out of the proceeds of the down payment satisfied, as far as the funds allowed, the expenses of sale and the Pelc creditors in order of priority. (Exhibit 5).

5. The parties, Pelcs and Dahls, all signed a collection escrow (Exhibit 6) which continued the "condition" of sale by directing payment of Pelc judgments as listed in the title report. A copy of the Hogan letter (signed by Pelcs) was attached to those escrow instructions.

6. Pelc delivered to P.N.T.I. the Promissory Note from Dahls, the recorded Mortgage from Dahls, and a Satisfaction of Mortgage. Pelcs did not hold in their possession any of the incidents of ownership of the Dahl-Pelc debt.

It is clear from the evidence that the Pelcs and Dahls intended payment to the judgment creditors through the escrow as an integral part of the real property sale agreement even though the record is unclear as to whether legal title ever actually vested in the Pelcs. Performance of the agreement satisfies obligations of the Pelcs to pay money to the judgment creditors beneficiaries and serves to protect Dahls by eliminating potential clouds to title and resolving claims which could otherwise burden them as mortgagors. The record reveals that at least one judgment creditor, Stampers, became aware of the escrow provisions and forebore further proceedings to enforce its judgment in anticipation of payment pursuant to the escrow instructions. The Pelcs and Dahls have never modified their agreement for payment to the judgment creditors. The judgment creditors are intended creditor beneficiaries of the Pelc-Dahl agreement.

The issue of when the transfers to the judgment creditors occurred for purposes of 11 U.S.C. Section 547 is critical to the trustee's recovery because of the requirement of Section 547(b)(4)(A) that a transfer of the debtors' property to a non-insider must have been "made on or within 90 days before the date of the filing of the petition" for the transfer to be a voidable preference. Section 101(40) of the Bankruptcy Code defines "Transfer" as:

> "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest."

Delivery by the Pelcs of the Dahl note and mortgage and the executed Satisfaction of Mortgage into escrow subject to the escrow instructions constituted a "transfer" within the meaning of the Code as the Pelcs parted with the note, mortgage and mortgage satisfaction subject to the terms of the escrow.

The escrow arrangement involved a two step process. The escrow agent is the agent of neither the Pelcs or the Dahls, but occupies a unique position as the trustee of an express trust. *Foulkes v. Sengstacken*, 83 Or. 118, 158 P. 952, 163 P. 311 (1917). A consummated escrow involves two deliveries: (1) To the depositary; and (2) To the beneficiaries. It is different than the ordinary instance of a conditional delivery to an agent for later delivery to a third party in that the agency does not terminate upon the death of a party to the escrow. *Foulkes, supra.* The relationship is governed by the terms of the escrow instructions. The requirement of Section 547(b) of the Code that a transfer of the *debtors' property* must have been made on or within 90 days before the date of the filing of the petition renders the transfers made to judgment creditors from the escrow pursuant to the instructions not voidable preferential transfers as the trustee asserts. Property of the debtors, the right to receive payment from the Dahls, was transferred at the time of delivery into escrow of the note, mortgage and Satisfaction of Mortgage. The interest of the debtors after delivery was wholly dependent on the terms of the es-

crow. Consequently, distribution of the installment to the judgment creditors pursuant to the escrow instructions did not involve a transfer of property of the debtors. Absent consent on the part of the Dahls the escrow instructions could not be modified and the Pelcs had a property right only to the extent so provided in the escrow instructions. No evidence of any consent to modification of the escrow instructions by the Dahls has been offered nor has any reason to consent been shown. The property transferred to the escrow by the Dahls remains their property and not that of the debtors until the terms of the escrow are met, and thus the funds in escrow never became property to which the Pelcs were entitled. See *Kelly v. Steinberg,* 148 Cal. App.2d 211, 306 P.2d 955, 959 (1957).

The defendants also assert interest in the funds as assignees. The holding of the Court on the other issues makes it unnecessary that the Court address this contention.

The escrow arrangement utilized in this case is a common method of insuring the parties to the agreement get what they bargained for. It allows the parties, including the debtors, to obtain expeditious settlement of their rights and obligations without multiplicity of litigation. Allowing recovery by the trustee and debtors would defeat the reasonable commercial practice employed, and could impose potential liens on real property transferred or other burdens upon the Dahls which would require the opportunity of the Dahls to be made a party to do complete justice. As the author writes in 1A Corbin on Contracts, Section 249 at p. 418:

> "The ordinary function of an escrow or of a conditional delivery of a document is to give security to both parties to an existing transaction. The grantor or promisor wishes to retain a certain property interest or not to assume immediate duties and liabilities, and at the same time to be assured of getting certain values in return. The grantee or promisee wishes ample security that if he gives those return values, he will actually be invested with the property that he covets or with the contract rights for which he

bargains. In order that each party shall have this security it is necessary for society to take notice of the escrow transaction and to indicate that societal action will be in large measure determined thereby. That is what is meant by 'legal relations,' by saying that a document 'takes effect' or is legally 'operative,' and by such terms as 'property interest' and 'contract rights.'

The courts did not hesitate to make the escrow subserve the economic function for which it was designed. They gave it exactly the effects that the parties desired. They made it irrevocable and binding from the time of the first delivery; they made it immediately enforceable, however, only in futuro and conditionally. On subsequent fulfilment of the condition, they gave it immediate and full enforcement without any second delivery.

First, it is undisputed that after delivery as an escrow the grantor or promisor has no power of revocation."

■ Accordingly, the trustee's complaint for avoidance and recovery of the transfers alleged as preferential is denied and he shall take nothing thereon. The debtors are entitled to claim as exempt only the portion of the funds subject to the escrow, if any, to which they are entitled under the escrow instructions over and above the instructed disbursements to others. Third party plaintiff P.N.T.I. is hereby ordered to disburse the funds held by it pursuant to the escrow in a manner consistent with the escrow instructions.

Separate Judgment consistent herewith in favor of defendants shall be entered and separate Order consistent herewith in favor of third party plaintiffs shall be entered. This Memorandum Opinion contains the Court's Findings of Fact and Conclusions of Law and pursuant to Bankruptcy Rule 752 they will not be separately stated. Each party shall bear his, her or its own costs and attorney fees in these proceedings.